799 So.2d 1263 (2001)
John LaROCCA
v.
William Raymond BAILEY.
No. 01-0618.
Court of Appeal of Louisiana, Third Circuit.
November 7, 2001.
*1265 Rudie R. Soileau, Jr., Lake Charles, LA, Counsel for Plaintiff/Appellant, John LaRocca.
Randall E. Hart, Broussard & Hart, L.L.C., Lake Charles, LA, Counsel for Defendant/Appellee, William Raymond Bailey.
Court composed of ULYSSES GENE THIBODEAUX, JIMMIE C. PETERS and MICHAEL G. SULLIVAN, Judges.
THIBODEAUX, Judge.
John LaRocca sued William Bailey to recover one-half of monies paid by Mr. LaRocca to satisfy the tax liability of an alleged partnership. The central issue in this case, and that urged by Mr. LaRocca, is the purported existence of a partnership in 1992 between the two men. The trial court granted Mr. Bailey's motion for summary judgment, finding no genuine issue of material fact as to the existence of a partnership in 1992. It also signed a judgment dismissing Mr. Bailey's reconventional demand without prejudice after the demand had been dismissed with prejudice in open court.
Mr. LaRocca appeals. Because we find the existence of genuine issues of material facts, we reverse the summary judgment granted to Mr. Bailey. We affirm the judgment dismissing Mr. Bailey's reconventional demand without prejudice.
I.
ISSUES
We shall consider:
1) whether the trial court erred by resolving conflicting evidence on a question of partnership status in the context of a motion for summary judgment and thereby committed reversible error and
2) whether a defendant who moves to dismiss a reconventional demand in open court with prejudice may later, by written motion, transform that motion into a motion for dismissal without prejudice.

II.

FACTS AND PROCEDURAL HISTORY
In 1991, Mr. LaRocca began operating Prien Lake Motors I, a used car dealership. The lot had been purchased by Mr. LaRocca the year before. He ran the business alone for a few months until he contacted Mr. Bailey with an offer to enter into a business agreement. Mr. Bailey testified in deposition that Mr. LaRocca asked him to work "with him" and not "for him." There was no written document evidencing their agreement or the date of its commencement. Mr. Bailey claims that he contributed nothing to the business other *1266 than his time and energy and that Mr. LaRocca owned and financed everything.
Once employed at Prien Lake Motors I, Mr. Bailey worked much as he had done when self-employed. Financed by Mr. LaRocca, Mr. Bailey bought cars wholesale and sold them retail. Once bought, Mr. LaRocca would occasionally purchase the vehicle at markup from Mr. Bailey and then place it on the lot to be sold. On other occasions, Mr. Bailey would sell a vehicle to a retail buyer in return for a twenty-five percent commission. Mr. Bailey paid Mr. LaRocca a "drafting fee" for each car he purchased, and Mr. LaRocca made $100 off each car Mr. Bailey sold. This arrangement lasted for seven or eight months.
In late 1991 or early 1992, Mr. LaRocca hired a salesman and Mr. Bailey was to manage the lot. The men agreed to evenly split the profits from the car sales. The profits were split only after the salesman's commission and overhead charge were deducted off the top. The commission and the overhead charges were called the "PAK" fee. This money was used to pay the business' operating expenses. Deposit tickets show that the "PAK" money went into the "John LaRocca Special" account.
In 1992, Mr. LaRocca filed a tax return that did not acknowledge a partnership. Mr. Bailey was listed as an independent contractor on the return and was issued a 1099 Form. In 1993, however, Mr. LaRocca filed a Schedule E with his tax return, formally acknowledging the existence of a partnership.
Mr. LaRocca was audited by the IRS in 1993. The auditor discovered unreported bank accounts and unreported taxable deposits. Mr. LaRocca was assessed penalties, which he paid, along with the attorney fees and accountant fees. When asked by Mr. LaRocca to contribute one-half of the expenses he incurred, Mr. Bailey refused. Mr. Bailey was also audited in connection with the 1992 tax year. He was found to owe additional tax money, which he paid.
A second lot was purchased in October 1992 called Prien Lake Motors II. Mr. Bailey made a cash contribution towards the purchase price. He paid Mr. LaRocca $17,500 for half the cost of Prien Lake Motors II and continued to make $1,000 monthly payments to Mr. LaRocca until the entire $35,000 purchase price was paid in full.
In late 1993, the two men decided to dissolve their business relationship. Mr. LaRocca and Mr. Bailey both signed a "Contract of Agreement" dated March 15, 1994, recognizing Prien Lake Motors II as a partnership. Mr. Bailey assumed full responsibility for assets, liabilities, profits, and gains at Prien Lake Motors II effective November 1, 1993, and "all assets owned by, profits realized and liabilities incurred by Prien Lake Motors 2 prior to November 1, 1993 are to be divided in accordance with the partnership agreement between Jonathan Wayne LaRocca and William Raymond Bailey." In effect, Mr. LaRocca assumed Prien Lake Motors I, and Mr. Bailey assumed Prien Lake Motors II. At the time of the partition, and at least by 1993, Mr. Bailey alleges that a partnership did exist between the two men. Mr. LaRocca maintains, however, that he and Mr. Bailey created and operated a partnership until the time of the acknowledged partition. After the men dissolved their business relationship, Mr. Bailey changed the name of Prien Lake Motors II to Bill Bailey's Affordable Used Cars.
This suit was filed by Mr. LaRocca in 1997 seeking to recover one-half of the taxes, penalties, interest, and professional fees resulting from the resolution of his tax liabilities. Mr. Bailey answered that no partnership existed in 1992 and that he was, therefore, not responsible for the liabilities. *1267 He also filed a reconventional demand for one-half of the unreported income conditional upon a finding that he was responsible for one-half of the taxes on that income.
After initial discovery, Mr. Bailey filed his first motion for summary judgment in 1998 which was dismissed by the trial court on the grounds that the existence of the partnership in 1992 was in dispute. After additional discovery, Mr. Bailey filed a second motion for summary judgment in November 2000 asserting that two essential elements for partnership were missing. The trial court agreed, and the motion was granted. It is from the grant of this second motion that Mr. LaRocca appeals.
Mr. LaRocca alleges error with the trial court's finding that there was no partnership in 1992 and in allowing Mr. Bailey to amend a prejudicial dismissal of the reconventional demand made in open court to a dismissal without prejudice.

III.

LAW AND DISCUSSION

The Issue of the Partnership
Essential to the resolution of this case is the existence or nonexistence of a partnership between Mr. LaRocca and Mr. Bailey in 1992. If a partnership existed, Mr. LaRocca is entitled to reimbursement of tax liabilities paid individually by him in accord with La.Civ.Code art. 2803, which mandates, among other things, that unless they agree otherwise, each partner participates equally in the losses of the partnership. Conversely, if no partnership existed in 1992, there is no basis for Mr. LaRocca's claim for reimbursement for the liabilities.
We begin with the well-settled rule that "[a]ppellate courts review summary judgments de novo under the same criteria that govern the district court's consideration of whether summary judgment is appropriate." Reynolds v. Select Properties, Ltd., 93-1480, p. 2 (La.4/11/94); 634 So.2d 1180, 1183; Leger v. La. Med. Mut. Ins. Co., 98-1098, p. 4 (La.App. 3 Cir. 3/31/99); 732 So.2d 654, 657, writ denied, 99-1253 (La.6/18/99); 745 So.2d 30. Because this is a summary judgment case to which La.Code Civ.P. art. 966 et seq. is applicable, it is necessary to first determine who will bear the burden of proof at trial. Subpart (C)(2) of La.Code Civ.P. art. 966 explains that
The burden of proof remains with the movant. However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact.
To establish the existence of a partnership without a written agreement, Mr. LaRocca bears the burden of proof. As the court succinctly points out in Butler v. Sudderth, 00-1950 (La.App. 5 Cir. 4/24/01); 784 So.2d 125, 130,
a plaintiff has the burden of proving that (1) the alleged partners mutually agreed to form a partnership and to participate in the profits which would accrue from the business in determined portions, (2) they agreed to share in the losses as well as the profits of the partnership, and (3) the property or stock of the enterprise formed a community of goods in which each party has a proprietary *1268 interest. Johnson v. Antoine, 98-1285, p. 3 (La.App. 5 Cir. 5/19/99), 735 So.2d 856, 858. The prerequisites for establishing a partnership are that the both parties intend to have a business relationship between them and that the relationship have all the major characteristics of a partnership. Glover v. Sowada, 457 So.2d 101, 104-105 (La.App. 5th Cir. 1984), writ denied 461 So.2d 316 (La. 1984).
As set out in La.Code Civ.P. art. 966(C)(1) and (2), a judgment granting Mr. Bailey's motion for summary judgment is proper as a matter of law if there exists no genuine issue as to material fact. Since Mr. Bailey is not to bear the burden of proof at trial on the issue of partnership, he is not required to negate all essential elements of Mr. LaRocca's claim. He must show an absence of factual support for one or more elements essential to the claim. If Mr. Bailey is successful, then the burden shifts to Mr. LaRocca to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial. If the plaintiff is successful, then there is a genuine issue of material fact.
We observe, as Mr. Bailey correctly explains, that it matters not what the parties called their business relationship nor does it matter what third parties believed the relationship to be. Mere perceptions do not prove the existence of a partnership. Rather, there must be evidence that both parties were to share in profits and losses, and that property or stock formed community of goods in which each party had proprietary interest. Marie v. Savoie, 470 So.2d 367 (La.App. 5 Cir.1985).
Mr. Bailey urges, and the trial judge found, that Mr. LaRocca is unable show two of the three essential elements, namely, that the men agreed to share in the losses and that Mr. Bailey had any proprietary interest in the property or stock of Prien Lake Motors. We disagree.
Mr. LaRocca testified in deposition that he could not remember whether the men had ever discussed the sharing of losses and Mr. Bailey testified that losses were never discussed. Mr. Bailey admits, however, that there was an agreement to share the profits on the car sales after the "PAK" fee was extracted (i.e., salesman commission and overhead).
Mr. LaRocca and Mr. Bailey agree on how profit was calculated and divided. Mr. Bailey explains the operation of the "PAK" fee in brief:
Bailey takes a hypothetical situation where a car which costs the lot $4,000 is sold for $5,000. First, the $200 PAK fee is added to the lot's cost for the car. This leaves a gross profit of $800. Then, the salesman is paid a 25% commission on the gross profit. In the hypothetical, 25% of $800 is $200. The salesman's commission, $200, is then deducted from the gross profit to yield a net profit of $600. LaRocca and Bailey split the net profits on each vehicle. In the hypothetical, LaRocca and Bailey each take $300.
Mr. Bailey argues that business records clearly show a collection of the "PAK" fee on each car sold. It is our opinion that the manner in which Mr. LaRocca and Mr. Bailey deducted the "PAK" fee from the gross profit creates a genuine issue of material fact as to whether the two men shared the losses. We employ Mr. Bailey's hypothetical to explain. The lot earned $1,000 before the overhead and salesman's commission were deducted. If there were no such deductions, each man would receive $500 rather than $300. However, because the deductions were made before the profits were split, we believe that reasonable minds could differ on whether the deductions of overhead and *1269 commission ($200 in this hypothetical) are a form of sharing of the loss. As a result of the deductions, each man could reasonably be found to be sharing $400 of the total losses. That Mr. LaRocca controlled the amount of the "PAK" fee, that the "PAK" fees were deposited into Mr. LaRocca's personal account, that excess "PAK" fees accrued to Mr. LaRocca, or that Mr. LaRocca supplemented insufficient "PAK" funds do not alter our conclusion.
Mr. Bailey maintains that he did not feel as though he had any proprietary interest in the business until the acquisition of the second dealership. We are not satisfied that no genuine issue of material fact exists on this issue and think that resolution of such will depend largely on the question addressed above of whether there was an agreement to share the losses. In other words, because we believe it conceivable that a reasonable person could determine that the existence of the "PAK" fee amounted to a sharing of the loss, we think it conceivable also that a reasonable person could, likewise, construe the fact that the "PAK" fee was used to pay business expenses as evidence of Mr. Bailey's proprietary interest in the business.
We are concerned with the number of unanswered questions relating to why Mr. Bailey suddenly felt as though he had a proprietary interest in 1993 but not in 1992. He attributes such feeling to having paid Mr. LaRocca $17,500 for half the cost of Prien Lake Motors II and having continued to make $1,000 monthly payments to Mr. LaRocca until the entire $35,000 purchase price was paid in full. In his 1997 deposition, Mr. Bailey said that "I felt like a full partner once weonce I give [sic] John [LaRocca] a lump sum of money to pay for half of Prien Lake Motors 2. That's when I felt like a partner." He went on to say that he paid that lump sum in "January of '93, February of '93somewhere maybe late '92, December." It was only then that he "felt like [he] had something." That same deposition contains the following colloquy:
Q: Okay. Now you mentioned October of '92 before on something. Why am I confused with that date?
A: That's when it was purchased.
Q: Okay. That's when you purchased [Prien Lake Motors] # 2?
A: Right.
If Mr. Bailey felt like he had a proprietary interest when Prien Lake Motors II was purchased (or when he paid the lump sum to Mr. LaRocca) and if that dealership was purchased in 1992 (or he made the lump sum payment in 1992), then we are left wondering why Mr. Bailey did not have a proprietary interest in 1992, the year in question. A trial on these matters is the only vehicle by which these concerns can be addressed.

The Dismissal With Prejudice in Open Court
Following the grant of Mr. Bailey's summary judgment motion on December 5, 2001, counsel for Mr. LaRocca and Mr. Bailey appeared again in court on the issue of the pending reconventional demand originally brought by Mr. Bailey. Mr. Bailey's attorney communicated in open court that the reconventional demand was to be dismissed with prejudice. No written dismissal was signed. When Mr. LaRocca appealed the grant of the motion for summary judgment, Mr. Bailey prepared a written dismissal without prejudice so as to preserve the reconventional demand. On February 1, 2001, the trial judge signed that motion and order to dismiss without prejudice, stating that:
When this Honorable court granted BAILEY'S Motion for Summary Judgment against LAROCCA, dismissing LAROCCA'S claims against BAILEY, BAILEY stated he would dismiss his *1270 claim with prejudice, but meant to say that his claim would be dismissed with prejudice as long as LAROCCA'S claim against BAILEY was denied, and that BAILEY wished to reserve his Reconventional Demand in the event the Motion for Summary Judgment was reversed.
The trial judge then ordered that Mr. Bailey's reconventional demand be dismissed without prejudice and signed the order.
Mr. LaRocca claims that once formally dismissed with prejudice, a claim cannot be resurrected. Mr. Bailey argues that La.Code Civ.P. arts. 1671 through 1673 refer to dismissals as "judgments" and that, according to La.Code Civ.P. art. 1911, every final judgment must be signed by the judge.
We begin this analysis with the understood rule that a motion and order to dismiss without prejudice has the same force and effect as a final judgment. La. Code Civ.P. art. 1918 reads in part that "[a] final judgment shall be identified as such by appropriate language." As the court pointed out in Gilcrease v. Bacarisse 26,318 (La.App. 2 Cir. 12/7/94); 647 So.2d 1219, writ denied, 95-0421 (La.3/30/95); 651 So.2d 845, the Official Revision Comment (a) to Art. 1918 explains that "[i]n Louisiana the form and wording of judgments is not sacramental. Nonetheless, Louisiana courts require that a judgment be precise, definite and certain." (Citation omitted). As in Gilcrease, the precise, definite, and certain language of the trial judge's motion and order to dismiss without prejudice is indicative of a final judgment. Moreover, the order complies with La.Code Civ.P. art. 1911 in that it was signed by the trial judge.
A central issue here emerges in the context of La.Code Civ.P. art. 1671, which reads:
A judgment dismissing an action without prejudice shall be rendered upon application of the plaintiff and upon his payment of all costs, if the application is made prior to any appearance of record by the defendant. If the application is made after such appearance, the court may refuse to grant the judgment of dismissal except with prejudice.
After the defendant has appeared, the trial judge has wide discretion to dismiss without prejudice, and such a decision will not be set aside absent clear abuse of discretion. Borrello v. City of Kenner, 99-420 (La.App. 5 Cir. 11/30/99); 750 So.2d 230; Martinez v. Dow Chem. Co., 97-289 (La. App. 5 Cir. 9/30/97); 700 So.2d 1096. In short, Article 1671 leaves to the discretion of the trial court the decision to dismiss without prejudice. Turner v. Leslie, 96-2288 (La.12/6/96); 684 So.2d 395.
We are aware of Vardaman v. Baker Ctr., Inc., 96 0831 (La.App. 1 Cir. 2/14/97); 689 So.2d 667, which explains that, because the plaintiff has the right to institute an action against the defendant initially, he has the corresponding right to dismiss the action with prejudice if he so chooses. However, we are not convinced that Mr. Bailey's counsel actively desired to dismiss his reconventional demand with prejudice. It seems as though the prejudicial dismissal was inadvertently made by defense counsel. If that were not the case, he would not have sought to amend the dismissal. The issue then becomes whether the trial judge had discretion to amend the dismissal to one without prejudice notwithstanding Mr. Bailey's counsel's dismissal with prejudice in open court.
What is said in open court will not take the place of a signed judgment. In Rene v. René, 95-0460 (La.App. 4 Cir. 6/29/95); 657 So.2d 788, the court found that a trial judge's oral reasons for judgment following the hearing must be reduced to a signed, written judgment before the movant could appeal. "When the *1271 oral reasons or minute entry conflicts with the written judgment, the latter governs. The trial judge may, within his authority, render judgment which differs substantially from his prior oral statements. Such oral reasoning forms no part of the judgment. It is the formal, signed judgment which governs the controversy." Marino v. Marino, 576 So.2d 1196, 1198 (La.App. 5 Cir.1991). (Citation omitted). Even written reasons for judgment contained in the record are unappealable until qualified within the context of a written, final, and appealable judgment. City of Kaplan v. Mayard, 616 So.2d 826 (La.App. 3 Cir. 1993).
We recognize that these cases deal with oral statements made in open court by the trial judge and not an attorney, but we feel that they are appropriately analogous to the circumstances of this case. Regardless of what was said in open court, by trial attorney or judge, the final, written judgment governs. Mr. LaRocca cites no jurisprudential or statutory authority contrary to this conclusion. Based on the foregoing, we find no merit to his argument that the trial judge's order must conform to what we believe to be counsel's inadvertent open court dismissal with prejudice.

IV.

CONCLUSION
For the above reasons, the judgment of the trial court granting Mr. Bailey's motion for summary judgment is reversed, and the judgment dismissing Mr. Bailey's reconventional demand without prejudice is affirmed.
AFFIRMED IN PART, REVERSED IN PART, AND REMANDED FOR TRIAL ON THE MERITS.