STATE OF LOUISIANA

COURT OF APPEAL, THIRD CIRCUIT

05-1016


DAVID BROWN AND KAREN BROWN

VERSUS

DOUGLAS ROMERO, KAREN LEBLANC, NICK LEBLANC, ET AL.


************

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. 2003-3315-A
HONORABLE JOHN TRAHAN, DISTRICT JUDGE

************

JAMES T. GENOVESE
JUDGE

************


Court composed of Jimmie C. Peters, J. David Painter, and James T. Genovese, Judges.


AFFIRMED.


Barton W. Bernard, A.P.L.C.
120 Representative Row
Lafayette, Louisiana 70508
**COUNSEL FOR PLAINTIFFS/APPELLANTS**:
    David Brown and Karen Brown

Julius W. Grubbs, Jr.
Haik, Minvielle & Grubbs
1017 E. Dale Street
Post Office Box 11040
New Iberia, Louisiana 70562-1040
**COUNSEL FOR DEFENDANTS/APPELLEES**:
    Karen LeBlanc and Nick LeBlanc

**GENOVESE, Judge.**

Plaintiffs appeal the trial court's granting of summary judgment in favor of Defendants thereby dismissing Plaintiffs' lawsuit. For the following reasons, we affirm.

## FACTS

This lawsuit arises out of a business venture by Ultra D Investments, L.L.C. ("Ultra D"), through which Douglas Romero ("Romero") intended to lease and renovate a building in downtown Lafayette, Louisiana, for the purpose of opening a bar. When the venture failed, Plaintiffs, David and Karen Brown ("Browns"), filed suit against Romero, claiming an ownership interest in Ultra D due to monetary contributions made by them to the company. The Browns also claimed reimbursement for the amount which they invested in Ultra D.

The Browns twice amended their lawsuit to add additional parties including Defendants/Appellees Nick and Karen LeBlanc ("LeBlancs"), Janice Wilkins, and Judith Verret. The Browns alleged that these additional parties conspired with Romero to deprive them of their interest in Ultra D. The Browns claim that Defendants' actions, or scheme, constituted a conspiracy, unfair activities, and unfair trade practices. A motion for summary judgment was filed by the LeBlancs asserting that there are no genuine issues of material fact and, as a matter of law, that the Browns are unable to prove the essential allegations in their petition. Following a hearing, the trial court granted the LeBlancs' motion for summary judgment. The Browns filed the present appeal.

## ISSUES

The following issues are presented by the Browns for our review:

1

1. Whether summary judgment should be granted when the established facts create a material issue of fact, and when material issues of fact exist regarding the LeBlancs' subjective intent, motive, knowledge, and bad faith in providing assistance to Douglas Romero, while knowing that their assistance to Romero would damage David and Karen Brown.

2. Whether summary judgment should be granted when the LeBlancs' affidavit offered in support of their summary judgment contains self-serving and conclusory factual and legal statements regarding the ultimate issues in this case.

3. Whether summary judgment should be granted when the statements contained in the LeBlancs' affidavit, used to support their summary judgment, are contradicted by Karen LeBlanc's own deposition testimony.

## LAW AND ARGUMENT

### Summary Judgment

"Appellate courts review summary judgments *de novo,* using the same criteria that govern the trial court's consideration of whether summary judgment is appropriate." *Richard v. Hall*, 03-1488, p. 4 (La. 4/23/04), 874 So.2d 131, 137; *Goins v. Wal-Mart Stores, Inc.*, 01-1136 (La. 11/28/01), 800 So.2d 783. The appellate court must determine whether "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law." La.Code Civ.P. art. 966(B). Despite the legislative mandate favoring summary judgments set forth in La.Code Civ.P. art. 966(A)(2), "factual inferences reasonably drawn from the evidence must be construed in favor of the party opposing the motion, and all doubt must be resolved in the opponent's favor." *Willis v. Medders*, 00-2507, p. 2 (La. 12/8/00), 775 So.2d 1049, 1050; *Indep. Fire Ins. Co. v. Sunbeam Corp.*, 99-2181, 99-2257 (La. 2/29/00), 755 So.2d 226.

Additionally, as we explained in *LaRocca v. Bailey*, 01-0618, pp. 5-6 (La.App.

2

3 Cir. 11/7/01), 799 So.2d 1263, 1267*:

> Because this is a summary judgment case to which La.Code Civ.P. art.
> 966 et seq. is applicable, it is necessary to first determine who will bear
> the burden of proof at trial. Subpart (C)(2) of La.Code Civ.P. art. 966
> explains that
>> The burden of proof remains with the movant. However,
>> if the movant will not bear the burden of proof at trial on
>> the matter that is before the court on the motion for
>> summary judgment, the movant's burden on the motion
>> does not require him to negate all essential elements of the
>> adverse party's claim, action, or defense, but rather to point
>> out to the court that there is an absence of factual support
>> for one or more elements essential to the adverse party's
>> claim, action, or defense. Thereafter, if the adverse party
>> fails to produce factual support sufficient to establish that
>> he will be able to satisfy his evidentiary burden of proof at
>> trial, there is no genuine issue of material fact.

In the instant case, the Browns bear the burden of proof at trial. Thus, as set forth above, summary judgment is proper, as a matter of law, if there exists no genuine issue of material fact. Since the LeBlancs do not bear the burden of proof at trial, the LeBlancs are not required, in a summary judgment proceeding, to negate all essential elements of the Browns' claims. Rather, they must show an absence of factual support for one or more elements essential to the claim. If they are successful, the burden of proof shifts to the Browns to produce factual support sufficient to establish that they will be able to satisfy their evidentiary burden of proof at trial. *LaRocca*, 799 So.2d 1263.

In support of their motion for summary judgment, the LeBlancs argue that the Browns are unable to prove an element of their claim, namely, that the LeBlancs were involved in a scheme or conspiracy with Romero to assist him in defrauding the Browns, thereby causing them damage. We agree.

Romero formed Ultra D for the purpose of renovating and leasing property in Lafayette, Louisiana, with the goal of operating a bar. The nature of the ownership

3

interest in this venture is what prompted this litigation. Romero and the Browns do not agree on what was contemplated by the parties and what monetary amounts, if any, are owed amongst the parties. Relevant to the present motion, however, are the Browns' allegations that the LeBlancs contributed money to Romero and assisted him in defrauding them of their ownership interest in Ultra D. The Browns assert that the LeBlancs conspired with Romero to own the assets of the company thereby taking advantage, for their own benefit, of the contributions which the Browns had made in the venture. The Browns conclude that the LeBlancs made these monetary contributions knowing of their ownership interest and that these contributions damaged them. Finally, the Browns claim that the LeBlancs prohibited them from entering the leased premises. The Browns contend that the actions of the LeBlancs constituted a conspiracy, unfair activities, and/or unfair trade practices.

For purposes of their motion for summary judgment, the LeBlancs conceded that the Browns contributed money toward Romero's efforts to open a bar known as the Skylight Lounge. The LeBlancs further conceded that an entity known as Ultra D was formed for the purpose of opening the bar and that a dispute concerning the rights and ownership status of the company arose between the Browns and Romero. The LeBlancs admitted that they knew the Browns gave Romero money for the purpose of opening the bar. They further admitted that they lent Romero money and that they did so knowing that Romero was going to use it to continue his efforts to open the Skylight Lounge. However, the LeBlancs claim that their actions of lending money to Romero were done out of the love and affection Karen LeBlanc had for Romero, her cousin,[1] and that loaning money to a relative to help him open a business

---

[1] The record contains an error regarding the exact nature of the familial relationship. In their brief, the LeBlancs refer to Douglas Romero as Karen LeBlanc's nephew, which is consistent with the affidavit of Nick and Karen LeBlanc wherein she is referred to as his aunt. However, Karen LeBlanc's deposition states that they are first cousins.

4

did not rise to the level of a conspiracy, unfair activities, or unfair trade practices.

It is evident that Romero and the Browns considered an arrangement through which they hoped to open the Skylight Lounge. Ultra D Investments, L.L.C. was formed as a limited liability company with Douglas Romero as the initial member and manager of the entity. A lease was executed and renovations were begun. Thereafter, a dispute arose between Romero and the Browns. In hopes of helping Romero accomplish his goal, the LeBlancs began lending him money to get the bar opened. Ultimately, the Skylight Lounge was never opened due to the fact that the Commissioner of the Louisiana Office of Alcohol and Tobacco Control denied a state liquor license to Romero on behalf of Ultra D. The business venture therefore ended without the Skylight Lounge being opened, with a dispute between Romero and the Browns over ownership interests in Ultra D and money owed, and without the LeBlancs being repaid the amounts which they lent Romero.

The Browns contend that the LeBlancs were engaged in a scheme or conspiracy to defraud them. However, the evidence does not support this allegation. The LeBlancs did not attempt to obtain any ownership interest in Ultra D or the Skylight Lounge fraudulently, or otherwise. They did nothing to prevent Ultra D from obtaining a liquor license or to prevent the bar from being opened. The LeBlancs involvement was limited to lending money to Romero to help him open the Skylight Lounge. There was no showing that the LeBlancs ever attempted to obtain assets of the company or to deprive the Browns of any ownership interest in the venture. Therefore, the Browns failed to meet their burden of proving that the LeBlancs were engaged in any scheme or conspiracy to take advantage of the Browns for their own benefit.

The Browns allege that the LeBlancs committed unfair trade practices. The

5

Louisiana Unfair Trade Practices and Consumer Protection Law provides that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." La.R.S. 51:1405(A). As this court has previously stated, "[c]onduct that violates the Unfair Trade Practices Act must involve fraud, misrepresentation, deception, or unethical conduct." *Glod v. Baker*, 04-1483, p. 11 (La.App. 3 Cir. 3/23/05), 899 So.2d 642, 649. "A trade practice is considered unfair when it offends established public policy and when it is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." *Laurents v. La. Mobile Homes, Inc.*, 96-976, p. 10 (La.App. 3 Cir. 2/5/97), 689 So.2d 536, 542 (citing *Thomas v. Busby*, 95-1147 (La.App. 3 Cir. 3/6/96), 670 So.2d 603, *writ granted and judgment vacated*, 96-0891 (La. 5/17/96), 673 So.2d 601, *aff'd on remand*, 95-1147 (La.App. 3 Cir. 11/13/96), 682 So.2d 1025, *writ denied*, 96-2990 (La. 2/21/97), 688 So.2d 517).

The Browns also assert that the LeBlancs engaged in "unfair activities." To the extent that these allegations constitute a claim for tortious interference with business relations, this court notes that this cause of action has been viewed by Louisiana courts with disfavor. *JCD Mktg. Co. v. Bass Hotels & Resorts, Inc.*, 01-1096 (La.App. 4 Cir. 3/6/02), 812 So.2d 834. "Louisiana courts have limited this cause of action by imposing a malice element, which requires that the plaintiff show the defendant acted with actual malice." *Id.* at 841. Similarly, to the extent that the allegations against the LeBlancs constitute intentional interference with contract, this cause of action has likewise been very limited in its application and requires a showing that the actions complained of were intentional, as opposed to merely negligent. *See Spears v. Am. Legion Hosp.*, 00-865 (La.App. 3 Cir. 1/31/01), 780 So.2d 493. Additionally, as we recognized in *Spears*, "in *9 to 5 Fashions Inc. v.*

6

*Spurney*, 538 So.2d 228 (La.1989), the Louisiana Supreme Court recognized a narrowly defined cause of action for the breach of duty by a corporate officer to refrain from intentionally and unjustifiably interfering with a contractual relationship between the officer's corporate employer and the particular plaintiff," which cause of action has been limited by this court to its facts. *Id*. at 496 (quoting *Healthcare Mgmt. Servs., Inc.* v. *Vantage Healthplan, Inc.*, 32,523, p. 3 (La.App. 2 Cir. 12/8/99), 748 So.2d 580, 582). Notably, however, the supreme court has expressly declined to recognize a cause of action for negligent interference with contract. *Great Southwest Fire Ins. Co. v. CNA Ins. Cos.*, 557 So.2d 966 (La.1990).

The Browns also argue on appeal that summary judgment should not have been granted due to inconsistencies and contradictions in the affidavit of Nick and Karen LeBlanc and Karen LeBlanc's deposition. This court has reviewed both the deposition and affidavit in question. Though there may have been some inconsistency, we do not find any contradictions pertinent and material to the issues in this case. Thus, any remaining factual issues are not material so as to preclude the granting of summary judgment.

The actions of the LeBlancs in lending money to Romero, even with knowledge of the involvement of the Browns with Romero in the business venture, do not satisfy the requirements of actual malice or intentional interference with contract. Given that such a showing is required for the claims asserted by the Browns, we find that they are unable to establish essential elements of their claims against the LeBlancs. Therefore, under the dictates of La.Code Civ.P. art. 966, the trial court was correct in granting the LeBlancs' motion for summary judgment.

Costs for this appeal are assessed against Plaintiffs/Appellants, David and Karen Brown.

**AFFIRMED.**