hJAMES C. GULOTTA, Judge Pro Tem.
This suit by an attorney intervenor for contractual attorney’s fees in connection with his representation of the plaintiff Josef A. Buruzs, resulted in a $1500 quantum meruit award. The attorney, Thomas E. Dunn, ap *1007 peals claiming that he is entitled to $40,000 based upon a 40% contract of $100,000 policy limits paid to the plaintiff in this personal injury suit. We affirm.
On December 12, 1993 Buruzs, an appliance repairman, took his four year old son with him on a customer service call. The young boy remained in the parked van, while his father worked in the customer’s home. While the boy was waiting, the van caught on fire.[1] Having been alerted of the fire, plaintiff tried to save his son but the child died, and Buruzs sustained burn injuries.
On December 20, 1998 Buruzs consulted the intervenor attorney, and on that date a contingent contract was entered into between Buruzs and the attorney.
This agreement differs according to the versions of the intervenor and that of Buruzs. According to Dunn, a contingent fee contract was entered into employing him to represent Buruzs in his claim arising out of the death of his son and resulting damages. The purported agreement specified thirty-three and one third percent attorney’s fees in the event a settlement was reached without the necessity of filing suit, and forty percent attorney’s fees in the event it became necessary to file suit. Despite the fact that Buruzs acknowledged that |2he signed the contract, Buruzs claims that he did not read the instrument and was under the impression that he was employing the intervenor attorney to obtain the van from the New Orleans Police Department for the purpose of having an inspection of it made by an expert. According to Bu-ruzs no copy of the document was furnished to him. However, a second agreement was signed between the attorney intervenor and Buruzs with a modification which is of no moment in the determination of the outcome of the instant case.
Dunn joined an attorney, Jesse Wimberly, to work with him in connection with his representation of plaintiff in this case. On July 6, 1994 suit was filed against the manufacturers of the wheelchair lift, and against Buruzs’ former spouse and her insurer. In January, 1995 a settlement for policy limits under the former wife’s auto liability insurer was made during the time Dunn represented plaintiff. Buruzs refused to sign the authorization to settle and on February 21, 1995 he sent Dunn a certified letter wherein he discharged Dunn from his representation as his attorney. According to Dunn, Buruzs expressed an intention to represent himself and settle the case. This intervention followed.
Dunn asserts the trial judge erred in allowing the case to be tried in the absence of an answer being filed; in erroneously interpreting the attorney/client contract; in finding that intervenor was discharged for cause thereby transforming the contingency fee contract into remuneration under quantum meruit; in failing to consider the evidence of the time, expense, effort and results of inter-venor in the prosecution of the case; in failing to consider the joint efforts of interve-nor and his co-counsel, Jesse Wimberly; in determining the quantum meruit award; and in finding that Buruzs had no way of knowing that the claim for the products liability included a claim against his ex-wife’s insurer.
| ¡¡Intervenor initially asserts because there was no answer, issue has never been joined, and the matter was not ready for trial. We reject this contention. An answer may be filed at any time prior to obtaining a judgment whether the time designated has elapsed or not. Chevron U.S.A., Inc. v. Oliver, 590 So.2d 1248, 1250 (La.App. 1 Cir. 1991); writ denied, 597 So.2d 1028 (La.1992). This circuit has held that the necessity of filing an answer is precluded in some instances. See Globe Automobile Finance Company v. Language, 261 So.2d 708, 711 (La.App. 4th Cir.1972).
In the instant case, it is true that no answer had been filed to the intervention and Dunn complained at a Friday, December 15, 1995 hearing that no answer had been filed. However, there was discussion at that hearing relating to quantum meruit. Dunn indicated at that hearing that an answer could be faxed. At a following Monday, December 18, 1995 intervention hearing, Dunn testified *1008 that he received a fax with the answer on December 15, 1995 at 5:25 p.m. Despite his assertion that he needed an answer to understand the nature of the defense to the intervention,' Dunn testified he knew the defense would be quantum meruit.[2]
Because we conclude that Dunn was made aware of Buruzs’ defense prior to the intervention hearing, and he had received an answer by fax as suggested by him (Dunn), we cannot conclude that Dunn’s complaint of the lack of an answer in the record constituted an impediment to the action of the trial judge in going forward with the intervention hearing.
|4Turning now to Buruzs’ claim that he had not read the purported contract and that he had not, under any circumstances, employed Dunn to file a suit against his ex-wife and her insurer, we find merit to this contention.
In well supported Reasons for Judgment by the trial judge, he stated:
Buruzs, who appeared to be a credible witness, states he had no intention of signing away his rights on the insurance policy of the vehicle. Defendant Dunn states otherwise,
Certain facts appear from the evidence to dictate in favor of Mr. Buruzs.
(1) Buruzs was not furnished a copy of the initial contact.
(2) As soon as a contract was signed Dunn immediately asked Jesse Wimberly to handle the claim.
(3) Dunn, despite calls, did nothing to communicate with Buruzs.
(4) Dunn filed a petition without notifying Buruzs or allowing him to review or to verify the pleadings.
(5) He also failed until March or April of 1994 to furnish a copy of the original agreement to Buruzs.
(6) He also failed for many months to furnish a copy of the pleadings to Buruzs.
In further Reasons for Judgment the judge stated:
The court is satisfied that the work performed by Dunn in this case is minimal, and that Buruzs did not understand, was not advised and had no way of knowing that the claim for the products liability included his claim against his wife’s insurer which he wanted to handle himself.
The record clearly supports the trial judge’s conclusion that “Buruzs ... had no intention of signing away his rights on the insurance policy of the vehicle....” The reference here is to the ex-wife’s automobile coverage policy. When considering Buruzs’ testimony, it is clear that he did not understand the | gnature and import of the purported contract. The significant part of Buruzs’ testimony, in response to questions by the trial judge, is as follows:
... He hold a piece of paper in his hands, said this is documentation Ford had problem with this 1985 model, this particular serial vehicle. And then he said he needed expert to take a look at it, see what went wrong. And Mr. Dunn asked me, he need my signature to authorize him so he would bring the expert to the police station on Almonaster Avenue, that was where the truck is, so they can verify this is the truck, what is the problems with it.... Then about a month and a half later, I was concerning. You know, I have no documentation what the expert is find. Then I made a definite appointment at his office, and I want to confront him. I want some documentation what the expert find and where the truck is.... And I still didn’t get no reply from Mr. Dunn what the expert find. Then I was concerning about what I signed. Then I asked him to copy. He won’t give it to me. Then on and on and on. Then I send registered letter and demanding I want a copy. So I ran to his office, he give it to me, and I find out it was a legal representation. Then I still didn’t get no copies....
*1009 Considering this testimony along with the record we are lead to conclude unequivocally that there existed neither understanding nor agreement on the part of Buruzs to the purported contingency contract.
A further portion of Buruzs’ testimony is clearly supportive of his claim. That testimony is as follows:
You never ever discussed it with me, the insurance company for liability. You suppose to handle only the lift company and the Ford Motor Corporation.
Based on credibility we cannot say the judge was manifestly in error. One need not go any further than beyond the testimony of Buruzs to reach a conclusion that Buruzs did not understand the document he had signed.
Because we conclude there existed no meeting of the minds between the parties to the purported contingency contract, we hold that no agreement came into existence. See LSA-C.C. art.1927; and Knecht v. Board of Trustees for \ State Colleges and Universities and Northwestern State University, 591 So.2d 690, 694 (La.1991).
Having so concluded, no necessity exists to consider whether Dunn was discharged with or without cause.
We now turn to a consideration of Dunn’s entitlement to attorney’s fees. Where there has been an enrichment in the absence of a contract, the law implies a promise to pay a reasonable amount of compensation. Kibbe v. Lege, 604 So.2d 1366 (La.App. 3d Cir.1992); writs denied, 606 So.2d 540, 541 (La.1992). See LSA-C.C. art. 2298.
Concluding in his Reasons that the intervenor wrote three letters on Buruzs’ behalf and that Dunn’s co-counsel had done “... the overwhelming bulk of the work”, the trial judge awarded $1,500 as compensation to the intervenor attorney. The judge eon-eluded that minimal work was entailed in the writing of the letters on the client’s behalf.[3]
From our consideration of the record, we can not say that the trial judge abused his much discretion.
Accordingly, we affirm the judgment of the trial court.

AFFIRMED.

. The van was owned by plaintiff's former wife and was equipped with a handicapped device, specifically, an automatic wheelchair lift.

. Dunn testified, "I should point out that the last time we were in Court which was [a] couple of months back as I recollect before we set this final date for this hearing, Mr. Mumme [Mr. Buruzs' attorney] and some of the other lawyers in this case were here and it was my impression at that time that there was an argument that my fee should be paid on a quantum meruit basis ...”

. It appears from the record that four letters were written on the client's behalf in connection with the instant case. On December 30, 1993 Dunn wrote a letter to Buruzs regarding removing the van; on February 24, 1994 Dunn wrote two letters, one to Buruzs and one to a psychiatrist, regarding scheduling an appointment for Buruzs. On August 21, 1994 Dunn wrote a letter to an attorney concerning an auto accident Bu-ruzs was involved in (this letter had nothing to do with the van fire); and, on January 13, 1995 Dunn wrote a letter to the office of vital records requesting the death certificate of the deceased child.