789 So.2d 41 (2001)
Al J. PHILIPS, Jr.
v.
August BERNER, Sr., and A & T Resources Management, Individually and Doing Business as Berner's Heating and Air-Conditioning.
No. 2000-CA-0103.
Court of Appeal of Louisiana, Fourth Circuit.
May 16, 2001.
*43 Alayne R. Corcoran, Kurt D. Engelhardt, Hailey, McNamara, Hall, Larmann & Papale, L.L.P., Metairie, for Plaintiff/Appellant.
Richard K. Leefe, Leefe Gibbs & Koehler, Metairie, for Defendant/Appellant.
Court composed of Judge JOAN BERNARD ARMSTRONG, Judge PATRICIA RIVET MURRAY, Judge JAMES F. McKAY, III.
McKAY, Judge.
The defendant, August Berner Sr., appeals the judgment of the trial court in favor of the plaintiff, Al J. Philips, Jr. which awarded him $25,000 in expenses, zero in lost profits, $20,000 in lost income, and $15,000 in general damages. After initially entering judgment in accordance with the jury verdict, the court denied new trial, granted a partial judgment notwithstanding the verdict (JNOV). The JNOV removed the $25,000 in expenses, because there was no evidence to support this award but left the rest of the jury's verdict intact. The plaintiff appeals the trial court's granting of the partial JNOV and the defendants' exception of no cause of action.

FACTS AND PROCEDURAL HISTORY
Mr. Phillips was employed by Berner's Heating and Air Conditioning Company Inc. (Berner's) in 1996 as a dispatcher. At some point, it became evident that Berner's was having financial difficulty; in fact the company was in bankruptcy court pursuant to Chapter 11 and was reorganized under a new entity, A & T Resources Management Inc. (A & T), which was owned by the defendant, August Berner, Sr.'s children.[1] In 1997, Mr. Philips approached Mr. August Berner, Sr. about the potential purchase of Berner's. Mr. August Berner Sr. agreed to allow Mr. LeHare, Mr. Philip's accountant, full access to all records to facilitate a business evaluation. Over the course of three to four months several general proposals were exchanged between Mr. August Berner *44 Sr. and Mr. Philips. The plaintiff alleges that in the spring of 1997, he and Mr. Berner Sr. agreed to a purchase price of $500,000. Mr. Philips submitted a written proposal to Mr. Berner, Sr. This proposal was consistent with an alleged conversation, but this proposal was never signed. Although several revisions were made to the document, the amount of the offer, $500,000, was not revised. The plaintiff was thereafter informed that the company was not for sale. Soon thereafter, Mr. Philips was fired from his employment at Berner's. Mr. Philips then filed his claim against the defendants for breach of contract.
The defendants point out that the discussions between Mr. Philips and August Berner, Sr. contained no specific details, and the various proposals were void of many factors essential for the confection of a sale of a complex business. The factors include: terms of payment; time for closing; what type of purchase it was, i.e. stock or asset purchase; would the plaintiff assume the receivables; were trucks owned by A & T to be included in the sale; who would be responsible for the warranties for work already done; what would happen to the service agreements outstanding; who got cash; and who would pay the existing payables. They also aver that the sale was subject to further negotiations, which never reached an agreement. After a trial on the merits the jury returned a verdict in favor of the plaintiff and awarded damages totaling $45,000 on the breach of contract claim.

ASSIGNMENTS OF ERROR
The defendant raises several assignments of error. The trial court erred in: finding there was a contract for sale; issuing only a partial JNOV on the entire jury verdict; and not granting post trial motions of defendant for remittitur, new trial and/or JNOV, as the jury granted damages for breach of contract where no contract existed. They further argue that the trial court erred in awarding lost income and general damages and in granting any judgment against the corporations.
Conversely, the plaintiff raises two issues for review. The trial court erred in granting defendant's partial JNOV as to the $25,000 in expenses thereby decreasing plaintiff's judgment. He further alleges that the trial court erred in sustaining defendant's partial exception of no cause of action under the Unfair Trade Practice Act, 55: 1401 et seq.

STANDARD OF REVIEW
When two permissible views of evidence exist, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong. Stobart v. State Department of Transportation and Development, 617 So.2d 880, 883 (La.1993). The issue to be resolved by the reviewing court is not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one. Id. at 882. The reviewing court may not disturb reasonable evaluations of credibility and reasonable inferences of fact when viewed in light of the record in its entirety even though it feels its evaluations are more reasonable. Id. Even though an appellate court may feel its own evaluations and inferences are more reasonable than the factfinder's, reasonable evaluations of and reasonable inferences of fact should not be disturbed upon review where conflict exists in testimony. Id. However, where documents or objective evidence so contradict the witness's story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable factfinder would not credit the witness's story, the court of appeal may find manifest error or clear wrongness even in a finding purportedly based on a credibility determination. Id. If the trial court or jury's findings are *45 reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even if convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Id.

DISCUSSION
In the case sub judice, the main issue involves the perfecting of a contract or purchase agreement. La. C.C. art.1906 defines a contract as an agreement by two or more parties whereby obligations are created, modified, or extinguished. Pursuant to La. C.C. art.1927, a contract is formed by the consent of the parties established through offer and acceptance. Unless the law prescribes a certain formality for the intended contract, offer and acceptance may be made orally, in writing, or by action or inaction that under the circumstances is clearly indicative of consent. Unless otherwise specified in the offer, there need not be conformity between the manner in which the offer is made and the manner in which the acceptance is made. Pursuant to La. C.C. art.2439, a sale is a contract whereby a person transfers ownership of a thing to another for a price in money. The thing, the price, and the consent of the parties are requirements for the perfection of a sale.
Four elements are necessary for formation of a contract in Louisiana: (1) capacity, (2) consent, (3) certain object, and (4) lawful cause. Leger v. Tyson Foods, Inc., 95-1055 (La.App. 3 Cir. 1/31/96), 670 So.2d 397.
The law has long been clear that in order to find that there was an agreement between the parties and have consent pursuant to La. C.C. art.1927, the court must find that there was a meeting of the minds of the parties. See. Buruzs v. Buruzs, 96-1247 (La.App. 4 Cir. 12/27/96), 686 So.2d 1006. Furthermore, it is horn book law that the consent of the parties is necessary to form a valid contract and where there is no meeting of the minds between the parties the contract is void for lack of consent. Stockstill v. C.F. Industries, Inc., 94-2072 (La.App. 1 Cir. 12/15/95), 665 So.2d 802, 820; Howell v. Rhoades, 547 So.2d 1087, 1089 (La.App. 1 Cir.1989).
The defendants argue that after three days of testimony in this matter, which produced witness after witness, for both sides, there was never a confirmation of an agreement. There was no agreement as to the assumption of trade debt, payables, assumption of loans, assumption of maintenance agreements, assumption of service agreements, who would get receivables, who would get cash, non-compete agreements, and how the trucks would be dealt with. There was never even an agreement as to who was selling the business and whether whoever was selling said business was selling stock, assets, receivables, etc.
Consent must include all of the elements of the sale. Here, the parties never even established what the terms of the agreement were. Mr. Philips even admitted that they had not had conversations about details. This is clear indicium that there was no meeting of the minds between the parties.
Conversely, the plaintiff argues that there was a binding agreement between the parties to sell Berner's. The plaintiff claims that he began conversation with August Berner, Sr., concerning the purchase of the business. He also mentions having discussions concerning the purchase of the business with his wife and claims to have made extensive plans for the future. These included hiring a CPA, Mr. LaHare, to evaluate the business and contacting the Whitney Bank to arrange for financing in the event that a purchase *46 price could be reached. The CPA evaluated the fair market value of the business at $450,000. Mr. Philips claims that negotiations lasted for three to four months, but were informal. Moreover, he contends that in spring of 1997, Mr. August Berner Sr. agreed to a purchase price. Mr. Philips then drafted a purchase agreement consistent with the alleged conversation, which contained a price of $500,000 for the business. He forwarded the agreement to Mr. August Berner Sr., which was never signed. Moreover, Mr. August Berner Sr. made several revisions to the document, which did not include a change in the price. Later, Mr. Berner informed the plaintiff that he had changed his mind and that he did not want to sell the business.
Plaintiff further alleges that on May 27, 1997, Mr. Berner approached him and requested an additional $200,000 for the business. The plaintiff asserts that August Berner Sr. succumbed to family pressure to renege on the alleged agreement that they had reached concerning the sale of Berner's. He also alleges that Mr. Berner never informed him that he did not have the authority to sell the business and that he breached an oral contract by reneging on an oral agreement to sell Berner's.
Plaintiff argues that under Louisiana law, a sale is perfected as soon as there is agreement between the buyer and the seller as to the thing sold and the price. La. C.C. art.2439. He argues that under the principles of contract law, a contract is formed by the consent of the parties established through offer and acceptance. La. C.C. art.1927 further states in pertinent part:
Unless the law prescribes a certain formality for the intended contract, offer and acceptance may be made orally, in writing, or by action or inaction that under the circumstances is clearly indicative of consent.
Unless otherwise specified in the offer, there need not be conformity between the manner in which the offer is made and the manner in which the acceptance is made.
Plaintiff contends that an oral contract was entered into between himself and Mr. August Berner Sr., confirming a $500,000 price for the business.
After a careful review of the record, which includes all of the documents and testimony, it is abundantly clear that there never was a contract, nor was a purchase agreement consummated. The various elements, which are necessary to connote a sale, are simply not present in the instant matter. Pursuant to La. C.C. art.2439, to perfect a sale one needs the thing, the price and the consent of the parties. One major obstacle that the plaintiff must overcome is the determination of what the thing or the object of the sale encompasses. All of the testimony and evidence points to the thing as being Berner's. Where the problem arises is that there were never any definite details as to what constituted Berner's business and exactly what was being purchased or even offered for purchase. Pursuant to La. C.C. art. 1947, "When, in the absence of a legal requirement, the parties have contemplated a certain form, it is presumed that they do not intend to be bound until the contract is executed in that form." The plaintiff submitted five written proposals to Mr. August Berner Sr.; he accepted none. The actions of the parties indicate that they intended to have the agreement in writing. The parties never consummated the purchase agreement in the form intended. There must be more than a service department room conversation, which seems to orally contemplate a price. This is obviously a complex proposed sale of a large business, with many elements that were never addressed, much less *47 agreed to, by the parties, nor reduced to writing. Indeed, the price is disputed in that Mr. August Berner Sr. counter-offered the plaintiff's $500,000 offer with a $700,000 offer. Even Mr. Phillips' banker said that he had not gotten to the point to approve the loan for Mr. Philips because he would require a written agreement, and that Mr. Philips told him he wanted to borrow $600,000, but that his lending authority was only $300,000. The loan form was never presented to a loan approval committee. Clearly, this was merely a proposal or offer still being negotiated, but never accepted. Moreover, there is no clear consent, which is required by La. C.C. art.1927.
There was no evidence of an agreement between the parties, nor was a contract for sale ever perfected. Hence, there was no agreement to breach. Furthermore, insufficient evidence was produced at trial for reasonable minds to find that there was an agreement between Mr. August Berner and Mr. Philips to sell Berner's based on the aforementioned law. The jury was unreasonable and clearly wrong in its verdict, based on the evidence presented at trial. Accordingly, we reverse the jury's award to the plaintiff for general damages.
The plaintiff asserts that the trial court erred in granting defendants' JNOV concerning the jury's verdict awarding the plaintiff $25,000 for expenses.
La. C.C. Pro. art.1811(F) is the authority for a JNOV. This article provides that a motion for judgment notwithstanding the verdict may be granted on the issue of liability or on the issue of damages or on both. The standard to be used in determining whether a JNOV has been properly granted has been set forth in our jurisprudence as follows:
A JNOV is warranted when the facts and inferences point so strongly and overwhelmingly in favor of one party that the court believes that reasonable men could not arrive at a contrary verdict. The motion should be granted only when the evidence points so strongly in favor of the moving party that reasonable men could not reach different conclusions, not merely when there is a preponderance of evidence for the mover. If there is evidence opposed to the motion which is of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motion should be denied. In making this determination, the court should not evaluate the credibility of the witnesses, and all reasonable inferences or factual questions should be resolved in favor of the non-moving party.

Smith v. Davill Petroleum Company, Inc. d/b/a/ Piggly Wiggly, 97-1596 (La. App. 1 Cir. 12/9/98), 744 So.2d 23, 27. quoting Anderson v. New Orleans Public Service, 583 So.2d 829, 832 (La.1991). Seagers v. Pailet, 95-52 (La.App. 5 Cir. 5/10/95), 656 So.2d 700; Engolia v. Allain, 625 So.2d 723, 728 (La.App. 1 Cir. 1993); Adams v. Security Ins. Co. Of Hartford, 543 So.2d 480, 486 (La.1989).
The standard of review for a JNOV on appeal is a two-part inquiry. In reviewing a JNOV, the appellate court must first determine if the trial court erred in granting the JNOV. This is done by using the aforementioned criteria, just as the trial judge does in deciding whether or not to grant the motion. After determining that the trial court correctly applied its standard of review as to the jury verdict, the appellate court reviews the JNOV using the manifest error standard of review. Anderson v. New Orleans Public Service, Inc., supra, at 832. In reviewing a judgment notwithstanding the verdict, the appellate court must determine if the trial court erred in granting it. quoting *48 Anderson v. New Orleans Public Service, Inc., 583 So.2d 829 (La.1991); Cormier v. McDonough, 96-305 (La.App. 3 Cir. 10/23/96), 682 So.2d 814, 816. It is well settled under Louisiana jurisprudence that a JNOV is warranted when the facts and the inferences point so strongly in favor of one party that the court believes that reasonable men could not arrive at a contrary verdict. Delaney v. Whitney National Bank, 96-2144, 97-0254 (La.App. 4 Cir. 11/12/97), 703 So.2d 709, 717.
The plaintiff asserts that he and his wife incurred expenses when making plans for the business that they were attempting to purchase, including remodeling their home to obtain a higher appraisal to facilitate obtaining the necessary financing, telling others of their new business, having a CPA check out the record of the prospective business, and contacting a bank for a potential loan. These assertions are a far cry from supporting an award of monetary damages. Nevertheless, the Jury returned a verdict in favor of the plaintiff for these expenses. The trial court granted the defendants' motion for JNOV and removed the jury award for expenses, which are special damages, for lack of evidence, because the plaintiff did not offer a "strand of evidence as to a single dollar spent". Clearly, the trial court did not error in granting the JNOV.
The plaintiff also asserts that the trial court erred granting the defendants' exception of no cause of action by denying his claim against the defendants for unfair trade practices, pursuant to the Louisiana Unfair Trade Practice Act (LUPTA), La. R.S. 51:1401 et seq.
The function of an exception of no cause of action is to test the legal sufficiency of the petition by determining whether the law affords a remedy on the facts alleged in the pleading. Everything on Wheels Subaru, Inc. v. Subaru South, Inc., 616 So.2d 1234, 1235 (La.1993). No evidence may be introduced to support or controvert the objection that the petition fails to state a cause of action. La. C.C.P. art.931. The court reviews the petition and accepts well-pleaded allegations of fact as true. Id. The issue at the trial of the exception is whether, on the face of the petition, the plaintiff is legally entitled to the relief sought. Id. The standard for granting an exception of no cause of action is as follows:
The burden of demonstrating that no cause of action has been stated is upon the mover or exceptor. In deciding the exception of no cause of action, the court must presume all factual allegations of the petition to be true and all reasonable inferences are made in favor of the non-moving party. In reviewing a trial court's ruling sustaining an exception of no cause of action, the court of appeal and this [the Supreme] court should subject the case to de novo review because the exception raises a question of law and the lower court's decision is based only on the sufficiency of the petition.
City of New Orleans v. Board of Com'rs, 93-0690, (La.7/5/94), 640 So.2d 237, 253 (Citations omitted).
The thrust of the plaintiff's argument is that he had an agreement to purchase Berner's from Mr. August Berner, Sr. and that by reneging on the purported price of $500,000, Mr. Berner was in defiance of LUPTA, because his conduct was unscrupulous, unethical and substantially injurious to plaintiff.
The statutory definition of an "unfair" practice is broad and subjectively stated and does not specify particular violations. Jarrell v. Carter, 577 So.2d 120, 123 (La.App. 1st Cir.1991), A practice is unfair when it offends established public *49 policy and when the practice is unethical, oppressive, unscrupulous, or substantially injurious. Id. at 123; see also Lilawanti Enterprises, Inc. v. Walden Book Co., Inc., 95-2048, (La.App. 4th Cir.2/29/96), 670 So.2d 558, 561; Bolanos v. Madary, 609 So.2d 972, 977 (La.App. 4th Cir.1992), writ denied, 615 So.2d 339 (La.1993); Dufau v. Creole Engineering Inc., 465 So.2d 752, 758. A trade practice is "deceptive" for purposes of LUTPA when it amounts to fraud, deceit or misrepresentation. United Group of Nat. Paper Distributors, Inc. v. Vinson, 27,739 (La.App. 2 Cir. 1/25/96), 666 So.2d 1338, 1346.
La. R.S. 51:1405 also provides the definition of an unfair trade practice as those of "unfair methods of competition..." and those "...in the conduct of a trade or commerce..." Mr. Philips was not a competitor and was not acting in the business of trade or commerce. He was an employee of Berner's seeking to purchase his employer's business. The defendants were in the air conditioning repair and maintenance business. This breach of contract claim between plaintiff and defendants was not grounded as a claim by a competitor in that business or as a consumer of air conditioner repair. LUPTA applies to competitors or consumers. Roustabouts Inc. v. Hamer, 447 So.2d 543 (La.App. 1 Cir.1984). Clearly, plaintiff's claim was not the type of issue or claim intended to be addressed by LUPTA. Moreover, no evidence suggests that defendants' actions were immoral, unethical, oppressive, unscrupulous, or substantially injurious to the plaintiff. Accordingly, we find no error in the trial court's judgment granting the defendants' exception of no cause of action and dismissing the plaintiff's LUPTA claim.
Accordingly, we affirm the trial court's granting of a partial JNOV and defendant's exception of no cause of action but, reverse the trial court's award of general damages and lost wages, as there is insufficient evidence to support the jury verdict for breach of contract.
AFFIRMED IN PART AND REVERSED IN PART.
NOTES
[1] Because of a large tax lien, August Berner Sr. did not own any stock of either company but continued to manage the business. Mr. Berner Sr.'s brother also did not own any of the stock.