# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 14-46


MARK A. GRAVEL PROPERTIES, LLC

VERSUS

EDDIE'S BBQ, LLC, ET AL.


**********

APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, NO. 245,307
HONORABLE GEORGE C. METOYER, JR., DISTRICT JUDGE

**********

## MARC T. AMY
## JUDGE

**********

Court composed of Sylvia R. Cooks, Marc T. Amy, and J. David Painter, Judges.


**AFFIRMED.**

**Ricky L. Sooter**
**Provosty, Sadler, deLaunay,**
**Fiorenza & Sobel, APC**
**Post Office Box 1791**
**Alexandria, LA   71309-1791**
**(318) 445-3631**
**COUNSEL FOR DEFENDANTS/APPELLEES:**
     **Eddie's BBQ, LLC, et al.**

**Scott M. Brame**
**Post Office Box 126**
**Alexandria, LA   71309-0126**
**(318) 442-1775**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
     **Mark A. Gravel Properties, LLC**

**AMY, Judge.**

The parties herein were involved in the sale of a parcel of real property. However, a dispute arose regarding whether the seller improperly burdened the property with an additional servitude after the sales contract was signed and recorded. After the seller refused to cancel the servitude, the purchaser filed suit, seeking to compel the seller to void the servitude and proceed with the sale. After a trial, the trial court found that no sales contract had been confected because there was no meeting of the minds. The purchaser appeals. For the following reasons, we affirm.

### Factual and Procedural Background

This litigation involves the sale of a piece of real property owned by one of the defendants, Eddie's B-B-Q, LLC.[1] The property is located on Castle Road behind the Eddie's B-B-Q restaurant and adjacent to the Ahrens Ewing Towne Centre. Although Eddie's B-B-Q restaurant shares a name with the owner of the real property, Eddie's B-B-Q, LLC, the record indicates that the restaurant is located on property owned by another defendant, Smead Corporation. The record also indicates that the management of Eddie's B-B-Q, LLC and Smead Corporation involves several of the same parties, including one of the defendants, Edward K. Ahrens, Jr., and his son, Daniel Ahrens.

The record further indicates that, in 2011, Eddie's B-B-Q, LLC and Ahrens Ewing Towne Centre entered into a servitude agreement which allows access from Castle Road to the Ahrens Ewing Towne Centre across the paved portion of the property. However, one of the disputed issues in this litigation is access to and

---

[1] Eddie's B-B-Q, LLC is also spelled as "BBQ" in the record. We use the hyphenation contained in the petition.

from Eddie's B-B-Q restaurant across the paved portion of the property. Edward K. Ahrens, Jr. testified that it is necessary to cross the paved portion of the property in order to access Eddie's B-B-Q restaurant drive-through. Further, Daniel Ahrens testified that access across the paved portion of the property was necessary for deliveries to Eddie's B-B-Q restaurant. According to Daniel Ahrens, such access had been permitted "from the beginning."

At some point, Eddie's B-B-Q, LLC listed the property for sale, and the plaintiff, Mark A. Gravel Properties, LLC, became interested in purchasing the property. The parties signed an Agreement to Purchase/Sell on May 9, 2012.[2] Attached to the agreement was a property condition disclosure form, which stated that there was "Cross Access with Towne Centre and Eddie's BBQ[.]" The record indicates that the agreement was recorded with the Rapides Parish Clerk on June 13, 2012. Thereafter, Eddie's B-B-Q, LLC and Ahrens Ewing Towne Centre recorded an Act of Correction, which was signed on June 15, 2012, and addressed the existing servitude. Eddie's B-B-Q, LLC and Smead Corporation also recorded a Reciprocal Servitude Agreement, which was signed on June 15, 2012, and created a predial servitude for pedestrian and vehicular traffic.

Upon discovering that an additional servitude had been created, Mr. Gravel demanded that Edward K. Ahrens, Jr., cancel the Eddie's B-B-Q, LLC/Smead Corporation servitude. However, the servitude was not cancelled, and the parties did not proceed with closing. Thereafter, Gravel Properties filed this suit against Eddie's B-B-Q, LLC, Smead Corporation, and Edward K. Ahrens, Jr., individually, seeking to have the Eddie's B-B-Q, LLC/Smead Corporation

---

[2] The record indicates that the agreement was signed by Mark A. Gravel, on behalf of Gravel Properties, and Daniel Ahrens, on behalf of Eddie's B-B-Q, LLC.

servitude cancelled and to compel specific performance. Contending in part that the Eddie's B-B-Q, LLC/Smead Corporation servitude was intended to document an already existing agreement and that the access issue had been disclosed to the plaintiff, the defendants filed a reconventional demand, seeking cancellation of the Agreement to Purchase/Sell and an award of the deposit and attorney's fees, costs, and other expenses.

After a trial, the trial court found that there was no meeting of the minds with regard to the contract and thus that the "contracts fall and that the parties have to be put back in the same position as before the contracts." The trial court entered judgment dismissing the plaintiff's claims and declaring the Agreement to Purchase/Sell null and void and ordering it cancelled from the public records.

The plaintiff appeals, asserting as error that:

1. The district court erred in applying the law of obligations and contract interpretation to the case *sub judice*.

2. The district court erred in failing to find the seller committed a bad faith breach of contract.

3. The district court clearly erred in holding there was "no meeting of the minds" when defendants had not even plead "error" as an affirmative defense to the contract.

4. The district court erred in rescinding a valid and enforceable contract to purchase and sell.

5. The district court erred in not cancelling the servitude, created under subterfuge, by the seller after the contract to buy and sell was recorded.

6. The district court erred in failing to order the seller to specifically perform under the contract to buy and sell that was recorded.

**Discussion**

*The Trial Court's Consideration of Lack of Consent*

One of Gravel Properties' assignments of error is that the trial court erred in considering whether a contract existed, because the defendants did not specifically assert error as an affirmative defense. Our review of the record indicates that the defendants did not specifically plead error as an affirmative defense.

However, we find no error on the part of the trial court in considering whether there was consent to the contract. Louisiana Code of Civil Procedure Article 1005 requires the answer to "set forth affirmatively . . . duress, error or mistake, . . . and any other matter constituting an affirmative defense." The defendants' answer does not specifically set forth any affirmative defenses but does contend that the property condition disclosure form contained notification of "Cross Access with Towne Centre and Eddie's BBQ[.]" "The purpose of [La.Code Civ.P.] art. 1005 is to prevent surprise by giving the plaintiff fair notice of the nature of the defense, thereby preventing interjection of unexpected issues." *Ochsner Clinic Found. v. Arguello*, 11-326, p. 8 (La.App. 5 Cir. 11/29/11), 80 So.3d 622, 626. Thus, we find that the allegations in the defendants' answer sufficiently set forth facts which put Gravel Properties on notice of the consent issue. *See LaCross v. Cornerstone Christian Acad. of Lafayette, Inc.*, 04-341 (La.App. 3 Cir. 12/15/04), 896 So.2d 105, *writ denied*, 05-128 (La. 3/24/05), 896 So.2d 1037.

Additionally, the record indicates that testimony and argument on this issue were offered at trial without objection by Gravel Properties. Although Article 1005 is construed liberally, when the defendant fails to plead an affirmative defense in his answer, no proof may be offered at trial in support of that defense.

4

*American Gulf V, Inc. v. Hibernia Nat. Bank*, 99-376 (La.App. 5 Cir. 11/10/99), 749 So.2d 722. "However, where an affirmative defense has not been pleaded but the opposing party nevertheless fails to object to the introduction of evidence bearing on the affirmative defense and which is not relevant to other issues raised in the pleadings, the pleadings are considered to have been enlarged to include the affirmative defense." *Cypress Oilfield Contractors, Inc. v. McGoldrick Oil Co., Inc.*, 525 So.2d 1157, 1162 (La.App. 3 Cir.), *writ denied*, 530 So.2d 570 (La.1988). Given the evidence in the record that the defendants put Gravel Properties on notice of the consent issue and that Gravel Properties failed to object to the defendants' introduction of evidence concerning this issue at trial, we do not disturb the trial court's consideration of the consent issue.

This assignment of error is without merit.

*Extrinsic or Parol Evidence*

One of Gravel Properties' assignments of error concerns the trial court's consideration of parol evidence. Generally, parol evidence is not admissible to negate or vary the terms of an authentic act or an act under private signature. La.Civ.Code art. 1848. However, "in the interest of justice, that evidence may be admitted to prove such circumstances as a vice of consent or to prove that the written act was modified by a subsequent and valid oral agreement." *Id.* Additionally, if the written expression of the parties' common intent is ambiguous, parol evidence is admissible. *Campbell v. Melton*, 01-2578 (La. 5/14/02), 817 So.2d 69. As discussed more fully below, the property condition disclosure form attached to the Agreement to Purchase/Sell provides for "Cross Access with Towne Centre and Eddie's BBQ." This statement is ambiguous with regard to whether there was access only between Eddie's B-B-Q, LLC and Ahrens Ewing

Towne Centre or access between the property and both the Eddie's B-B-Q restaurant and Ahrens Ewing Towne Centre.

Further, we observe that the initial consideration in this case is whether the requirements for contract formation were met. In those circumstances, several Louisiana courts have considered extrinsic evidence in determining whether a contract was formed. *See*, *e.g.*, *Marcantel v. Jefferson Door Co., Inc.*, 01-1307 (La.App. 5 Cir. 4/10/02), 817 So.2d 236; *Buruzs v. Buruzs*, 96-1247 (La.App. 4 Cir. 12/27/96), 686 So.2d 1006. Accordingly, we find no error on the part of the trial court in considering extrinsic or parol evidence.

*Existence of the Contract*

The heart of Gravel Properties' assignments of error is that the defendants failed to act in good faith in executing the Agreement to Purchase/Sell and that the trial court erred in finding that there was no meeting of the minds.

"A contract is formed by the consent of the parties established through offer and acceptance." La.Civ.Code art. 1927. In *Philips v. Berner*, 00-103, p. 5 (La.App. 4 Cir. 5/16/01), 789 So.2d 41, 45, *writ denied*, 01-1767 (La. 9/28/01), 798 So.2d 119, the fourth circuit discussed contract formation, stating:

> Four elements are necessary for formation of a contract in Louisiana: (1) capacity, (2) consent, (3) certain object, and (4) lawful cause. *Leger v. Tyson Foods, Inc.*, 95-1055 (La.App. 3 Cir. 1/31/96), 670 So.2d 397.

> The law has long been clear that in order to find that there was an agreement between the parties and have consent pursuant to [La. Civ.Code] art.1927, the court must find that there was a meeting of the minds of the parties. See. [sic] *Buruzs v. Buruzs*, 96-1247 (La.App. 4 Cir. 12/27/96), 686 So.2d 1006. Furthermore, it is horn book law that the consent of the parties is necessary to form a valid contract and where there is no meeting of the minds between the parties the contract is void for lack of consent. *Stockstill v. C.F. Industries, Inc.*, 94-2072 (La.App. 1 Cir. 12/15/95), 665 So.2d 802, 820; *Howell v. Rhoades*, 547 So.2d 1087, 1089 (La.App. 1 Cir.1989).

6

The existence of a contract is a finding of fact, subject to the manifest error standard of review. *Dubois Const. Co. v. Moncla Const. Co., Inc.*, 39,794 (La.App. 2 Cir. 6/29/05), 907 So.2d 855.

The property condition disclosure form, which was executed by Daniel Ahrens, asks whether there are "any easements or servitudes on or affecting this property[.]" Daniel Ahrens indicated that there were and, in the explanation section, wrote that there was ""Cross Access with Towne Centre and Eddie's BBQ[.]" He testified that he assumed that there was a document providing for access for Smead Corporation across the Eddie's B-B-Q, LLC tract and that "cross access" meant that "all traffic would be able to pass through the Eddie's Barbeque parking lot, Eddie's Barbeque Restaurant, through Eddie's Barbeque office, through to Town Centre, and vice versa and all angles and directions at anytime, the way it's been from the beginning, not to interrupt any other business from traffic." According to Daniel Ahrens' testimony regarding that access, "that's what we thought we were selling." He also stated that he listed "Eddie's BBQ" instead of Smead Corporation because "Smead was the – was the company that bought the real estate and built the building but Eddie's Barbeque has always been the company that has operated the property and has always tried to make a living there[,]" and that, in his opinion, "every one knew exactly what Eddie's Barbeque was[.]"[3]

---

[3] We note that, on several occurrences in the record, multiple parties refer to both Eddie's B-B-Q restaurant and Eddie's B-B-Q, LLC as "Eddie's B-B-Q" or "Eddie's".

Edward K. Ahrens, Jr. testified that he filed the Eddie's B-B-Q, LLC/Smead Corporation easement in order to maintain the right-of-way from the Eddie's B-B-Q restaurant to Castle Drive "as it always has been[.]" According to Edward K. Ahrens, Jr., after the Agreement to Purchase/Sell was signed, he discovered that the existing servitude agreement did not include access for Smead Corporation or the Eddie's B-B-Q restaurant. Edward K. Ahrens, Jr. stated that he would not have signed the purchase agreement if the buyer was going to cut off access to the Eddie's B-B-Q restaurant drive through. He also testified that he informed Mr. Gravel that the sale only included the three parking spaces located next to the office/storage building on the property.

Mr. Gravel testified that he wanted to purchase the property as storage buildings. According to Mr. Gravel, the first time he looked at the property, he was not paying attention to the paved parking area. Mr. Gravel thought that he had the discussion about parking after the Agreement to Purchase/Sell was signed. Mr. Gravel testified that, at the time he looked at the property, it was correct that nothing blocked the public from travelling across the Eddie's B-B-Q restaurant parking lot, turning left, and swinging back through the drive through. Mr. Gravel assumed that the restaurant was going to shorten its drive through.

Here, there is sufficient evidence in the record to support the trial court's conclusion that there was no meeting of the minds between the parties with regard to the existence of access across the property for the Eddie's B-B-Q restaurant. The evidence supports the view that Eddie's B-B-Q, LLC both believed it was selling and intended to sell property which included predial servitudes of ingress and egress for both Ahrens Ewing Towne Centre and Smead Corporation. The testimony indicates that Eddie's B-B-Q, LLC would not have sold the property

8

without that access.  Further, the record reveals that Gravel Properties believed it was purchasing property that only included a predial servitude of ingress and egress for Ahrens Ewing Towne Centre.  Thus, based on our review of the record, we find no manifest error in the trial court's finding that there was no meeting of the minds.  *See Marcantel*, 817 So.2d 236; *Hartsell v. Pipes Auto Shop, Inc.*, 318 So.2d 627 (La.App. 2 Cir. 1975).

Gravel Properties' assignments of error which flow from the trial court's determination that there was no meeting of the minds are without merit.

*Bad Faith*

Pursuant to La.Civ.Code art. 1983, "[c]ontracts have the effect of law for the parties and may be dissolved only through the consent of the parties or on grounds provided by law.  Contracts must be performed in good faith."  However, because we have found no error in the trial court's conclusion that there was no meeting of the minds, and thus, there was no agreement to breach, we also find no merit in Gravel Properties' assertion that the defendants performed the contract in bad faith.

This assignment of error is without merit.

**DECREE**

For the foregoing reasons, the trial court's judgment is affirmed in its entirety.  Costs of this appeal are assessed to the appellant, Mark A. Gravel Properties, LLC.

**AFFIRMED.**