# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 24-158

**SUE SOILEAU BRIGNAC DURAND**

**VERSUS**

**VISTANA FALLS CONDOMINIUM ASSOCIATION, INC., ET AL**

**\*\*\*\*\*\*\*\*\*\***

APPEAL FROM THE
LAFAYETTE CITY COURT
PARISH OF LAFAYETTE, DOCKET NO. 2022 CV 03661, DIV. A
HONORABLE JULES D. EDWARDS, III, JUDGE

**\*\*\*\*\*\*\*\*\*\***

**JONATHAN W. PERRY**
**JUDGE**

**\*\*\*\*\*\*\*\*\*\***

Court composed of Candyce G. Perret, Jonathan W. Perry, and Charles G. Fitzgerald, Judges.

**REVERSED AND REMANDED.**

Steven G. Durio
Lauren Ashley Noel
Durio, McGoffin, Stagg & Guidry
220 Heymann Boulevard
Post Office Box 51308
Lafayette, Louisiana 70505-1308
(337) 233-0300
**COUNSEL FOR PLAINTIFF/APPELLANT:**
    Sue Soileau Brignac Durand

Craig D. Dillard
Nelson Mullins Riley & Scarborough, LLP
1111 Bagby Street, Suite 2100
Houston, Texas 77002
(346) 646-6670
**COUNSEL FOR DEFENDANTS/APPELLEES:**
    Vistana Falls Condominium Association, Inc., Vistana Management, Inc.,
    Vistana Portfolio Services, Inc., and Vistana Signature Experiences, Inc.

**PERRY, Judge.**

This case concerns a time share in which the plaintiff appeals a judgment which sustained the peremptory exception of no cause of action and dismissed her Petition for Specific Performance and Damages brought against Defendants. We reverse the trial court judgment and remand the matter for further proceedings.

## FACTS AND PROCEDURAL HISTORY

The pleadings of Sue Soileau Brignac Durand ("Durand") allege that on February 15, 1974, she married David Creig Brignac ("Brignac"). Later, on March 7, 1984, Durand and Brignac purchased a Vistana Unit 259 timeshare from Vistana Falls Condominium Association, Inc. ("Vistana") identified as 02-12-903640 Vistana's Sheraton Vistana Resort ("the timeshare"). Durand and Brignac were identified as Vistana Owner Number 903640.

Brignac died on November 2, 2009. His succession was opened on November 16, 2009, at which time his will dated February 11, 2008, was probated. On November 20, 2009, Durand was recognized as the Independent Executrix of the Succession of David Creig Brignac. Thereafter, on February 1, 2011, a judgment of possession was signed, placing Durand into possession, *inter alia* of "E. . Timeshares 1. Vistana Resort, Inc. P. O. Box 22197, Lake Buena Vista, FL 32830 Vistana Falls Condominium Acct. 259-34-03640 dated March 7, 1984, Unit Week 34 in Unit 259 Owners: David C. Brignac and Sue S. Brignac," individually and as usufructuary for life with power of disposition and testamentary trustee.

On June 10, 2022, Vistana Management, Inc. ("VMI") sent a letter to "David Crei C. [sic] Brignac c/o Sue Brignac" regarding unpaid maintenance fees, accrued interest, and late charges owed on the timeshare, totaling $1,132.85. In that letter to Brignac, referenced in the salutation as "a married man", VMI offered two options to resolve the delinquencies. First, remittance of the delinquent fees could be made,

and VMI would file a Satisfaction of the Claim of Lien that would be recorded in the courthouse. In the alternative, the correspondence stated:

> Your second option is to deed the property to the owner's association for Vistana Falls Condominium Association Inc in lieu of foreclosure. This offer will release you from all current and future financial obligations to the owner's association. Please contact us to take advantage of the offer and the appropriate documents will be sent to you at no cost.

Shortly thereafter, on June 23, 2022, VMI re-urged its offer, stating:

> At this juncture, we are being forced to initiate legal action to foreclose your interest in the above-referenced timeshare estate(s). It is our hope that we can still amicably resolve the issue of your delinquent maintenance fee account and bring your account current. However, if you are unable to pay the outstanding amount in full, another option is to deed the property to the owner's association which will release you from all current and future financial obligations to the owner's association. Please contact us if you would like to take advantage of this offer and we will have the necessary documents sent to you at no cost.
>
> . . . .
>
> Should you fail to respond to this letter within 30 days after the date of this letter, we will have no choice but to file a foreclosure or revocation action.

In a mailing to Vistana dated July 1, 2022, and a separate mailing to VMI dated July 28, 2022, Durand, through counsel, accepted Vistana's offer. The letters state:

> By letter dated June 10, 2022[,] addressed to David Creig Brignac c/o Sue Brignac . . . my client was notified regarding an alleged debt and offered the option "to deed the property to the owner's association for Vistana Falls Condominium Association Inc."
>
> This letter shall serve as my client's acceptance of the offer by Vistana Falls Condominium Association, Inc. to deed the property to the owner's association for Vistana Falls Condominium Association, Inc. and in exchange Vistana will release my client "from all current and future financial obligations to the owner's association."

On August 17, 2022, Vistana Portfolio Services, Inc. ("VPSI") formally responded on behalf of Vistana Signature Experiences, Inc. ("VSE") to Durand's

2

acceptance of the offer to deed the property to the owner's association. In the correspondence to Durand's counsel, VPSI stated:

> At this time, VSE does not offer a voluntary surrender program. As VSE has done for the owner(s) since their purchase, it will continue to assist in any manner possible so that the owner(s) may continue to enjoy vacations available via the timeshare interest(s). However, VSE will not agree to cancel the purchase, or accept a deed in lieu of foreclosure or quit claim deed at this time.

After the parties failed to amicably resolve their issues, Durand filed suit on November 16, 2022, against Vistana, seeking specific performance of the offer made to accept a deed of the property and to release her from financial obligations that may be owed. After Vistana claimed it had not made the offer, it filed a peremptory exception of no cause of action. After conducting a hearing, the trial court sustained Vistana's peremptory exception but allowed Durand to amend her petition. Durand supplemented and amended her original petition by naming all possible Vistana-related entities as party defendants, namely Vistana, VMI, VPSI, and VSE (collectively "Defendants"). In response, the Defendants again filed a peremptory exception of no cause of action.

After hearing oral argument from counsel for Durand and the Defendants, the trial court sustained the Defendants' peremptory exception of no cause of action and dismissed Durand's petition. This appeal followed.

## ASSIGNMENTS OF ERROR

1. The lower court erred as a matter of law in sustaining the exception of no cause of action to plaintiff's supplemental and amending petition.

2. The lower court erred as a matter of fact in accepting Defendant's argument that Sue Soileau Durand was not in privity with her husband.

3. The lower court misapplied La.Civ.Code art. 1932 to the circumstances of this case to erroneously hold that defendants' post-death offer to plaintiff expired before it had ever been made.

## PLAINTIFF'S ARGUMENT

Durand argues that this is a suit to specifically enforce a contract for *dation en paiement* made by written offer and acceptance and described in excruciating detail in the supplemental petition. The contract was authorized by Louisiana law and the petition sets forth a cause of action which Durand, the surviving wife and executrix of her husband's succession, could enforce. She further argues that it was error for the lower court to sustain the peremptory exception of no cause of action and dismiss the suit. Thus, Durand argues that the Order of Dismissal should be reversed on de novo review, and the case be remanded for further proceedings.

## THE DEFENDANT'S POSITION

Defendants contend that the real question in this lawsuit is whether notice letters addressed to Brignac constitute an offer to contract between Durand and Vistana because of the use of the term "in care of" in the notice letters. Addressing a letter "in care of" is not making an offer to contract with the person it is delivered to as a matter of law. Even if the notice letters contained an offer, which they did not, it would have been an offer to Durand's deceased husband, Brignac, not her. Relying on La.Civ.Code art. 1932, Defendants contend that even if the offer had been made to Brignac prior to his death, it would have expired at his death. Thus, they conclude that Durand has no cause of action for breach of contract or specific performance because there was no offer to contract made to her.

## APPLICABLE LAW

The purpose of the peremptory exception of no cause of action is to test the legal sufficiency of the petition by determining whether the law affords a remedy on the facts alleged in the petition. *Veroline v. Priority One EMS*, 09-1040 (La. 10/09/09), 18 So.3d 1273; *Scheffler v. Adams & Reese, LLP*, 06-1774 (La. 2/22/07), 950 So.2d 641. The peremptory exception of no cause of action is triable on the face

of the pleadings,[1] and, for purposes of resolving issues raised by the exception, the well-pleaded facts in the petition must be accepted as true. *Id.* To determine whether the trial court in the present case erred in granting Defendants' peremptory exception of no cause of action, we accept all facts alleged in the petition as true. In reviewing a trial court's ruling sustaining an exception of no cause of action, the appellate court conducts a de novo review because the exception raises a question of law and the trial court's decision is based only on the sufficiency of the petition. *Harrington v. Harrington,* 43,373 (La.App. 2 Cir. 08/13/08), 989 So.2d 838. "The pertinent question is whether, in the light most favorable to plaintiff and with every doubt resolved in plaintiff's behalf, the petition states any valid cause of action for relief." *Ramey v. DeCaire*, 03-1299, p. 7 (La. 3/19/04), 869 So.2d 114, 119.

## DISCUSSION

"A contract is an agreement by two or more parties whereby obligations are created, modified, or extinguished." La.Civ.Code art. 1906. The four elements required for confection of a valid contract are: (1) the capacity to contract (La.Civ.Code art. 1918); (2) mutual consent (La.Civ.Code art. 1927); (3) a certain object (La.Civ.Code art. 1971); and (4) a lawful cause (La.Civ.Code art. 1966). *Worley v. Chandler*, 44,047 (La.App. 2 Cir. 03/04/09), 7 So.3d 38; *Provenza v. Cent. & Southwest Servs., Inc.*, 34,162 (La.App. 2 Cir. 12/15/00), 775 So.2d 84. Louisiana Civil Code Article 1927, formerly La.Civ.Code art. 1798 (1870), provides that a contract is formed by the consent of the parties established through offer and acceptance. The will of the parties must unite on the same point. *Succession of*

---

[1] However, should evidence have been admitted without objection in the trial court, it may be viewed as an enlargement of the pleadings and considered as such. *Sterling v. Jones,* 255 La. 842, 233 So.2d 537 (1970); *Touro Infirmary v. Am. Maritime Officer*, 09-0697 (La.App. 4 Cir. 11/9/09), 24 So.3d 948; *Teague v. St. Paul Fire and Marine Ins. Co.,* 06-1266 (La.App. 1 Cir. 04/7/09), 10 So.3d 806, *writ denied,* 09-1030 (La. 06/17/09), 10 So.3d 722. In the present case, the pleadings were not enlarged in this manner.

5

*Aurianne*, 219 La. 701, 53 So.2d 901 (1951). This prerequisite is most often referred to as a "meeting of the minds." *Mark A. Gravel Props.*, *LLC v. Eddie's BBQ*, *LLC*, 14-46, p. 6 (La.App. 3 Cir. 5/7/14), 139 So.3d 653, 657 (quoting *Philips v. Berner*, 00-103 (La.App. 4 Cir. 5/16/01), 789 So.2d 41, *writ denied*, 01-1767 (La. 9/28/01), 798 So.2d 119)).

A "dation en paiement" or "giving in payment" is a legal concept in Louisiana civil law where a debtor transfers ownership of a thing to a creditor in satisfaction of a debt. La.Civ.Code art. 2655. All the elements necessary to perfect a valid sale—that is, agreement as to the thing and the price—are essential to the perfection of a giving in payment. *Slaton v. King*, 214 La. 89, 36 So.2d 648 (1948). In addition, "[d]elivery of the thing is essential to the perfection of a giving in payment." La.Civ.Code art. 2656. Moreover, under La.Civ.Code art. 2656, where the thing given in payment is an immovable, delivery is deemed to take place upon execution of the writing transferring ownership of the thing. *Miller v. Miller*, 234 La. 883, 102 So.2d 52 (1957).

Defendants contend that even if their letters contained an offer to accept the return of the timeshare in payment of the debt, the offer was made to Brignac not his wife. In support of its contention, Defendants rely on La.Civ.Code art. 1932 which states, "An offer expires by the death or incapacity of the offeror or the offeree before it has been accepted."

From the outset, we find Defendants' reliance on La.Civ.Code art. 1932 is misplaced as no offer was made to Brignac prior to his death. It is also evident that as a deceased person Brignac was incapable of entering into a contract with Defendants. *Cf.* La.Civ.Code art. 1918; *Taylor v. Taylor*, 32,517 (La.App. 2 Cir. 1/06/00), 755 So.2d 341; *Standard Life & Accident Ins. Co. v. Pylant*, 424 So.2d 377 (La.App. 2 Cir. 1982), *writ denied*, 427 So.2d 1212 (La.1983). However, as

explained below, Brignac's incapacity to contract alone is neither dispositive of the issue before us nor does it foreclose Durand's standing to seek enforcement of Defendants' offer by a suit for specific performance and damages.

"An obligation cannot exist without a lawful cause." La.Civ.Code art. 1966. "Cause is the reason why a party obligates himself." La.Civ.Code art. 1967. Moreover, "[a] party may be obligated by a promise when he knew or should have known that the promise would induce the other party to rely on it to his detriment and the other party was reasonable in so relying." *Id*. To understand our resolution of this case, it is important to first look more closely at the nature of Defendants' demand letters as they demonstrate the underlying cause for those communications.

The written correspondence VMI sent to "DAVID C BRIGNAC, A MARRIED MAN" in care of Sue Brignac[2] stated that the maintenance fee assessments for the timeshare in the amount of $1,133.85 were past due and a Claim of Lien encumbering the timeshare interest was imminent. In the letters VMI sent, it did not specify when the indebtedness was incurred. VMI further provided two options to avoid the filing of the encumbrance or to have the encumbrance lifted— the indebtedness, together with interest, late charges and administrative fees could be paid in full or the property could be deeded to the owner's association in lieu of foreclosure. Additionally, at the end of the letter, the following declaration was made:

> **FAIR DEBT COLLECTION PRACTICES ACT**
> **DISCLOSURE**
> Pursuant to 15 U.S.C. §1692(e)(11), you are hereby notified that this communication is made in an attempt to collect a debt and any information obtained will be used for that purpose.

---

[2] As indicated earlier, Defendants sent two letters: one on June 10, 2022, and the other on June 23, 2022. Although the letters are similar, the body of the letters is not the same. Nevertheless, both letters were sent in care of Sue Brignac, both refer to David Brignac as a married man, and both provide the same options regarding payment of the indebtedness.

Even though the written correspondence was directed to Brignac, it is abundantly clear that the reason behind Defendants' letters was the collection of a debt. That Brignac was the conduit for the collection of that debt does not end our inquiry.

Even though information about this debt was directed to Brignac, Defendants' written communications also acknowledged that he was a married man. Louisiana Civil Code Article 2361 states that "[e]xcept as provided in Article 2363, all obligations incurred by a spouse during the existence of a community property regime are presumed to be community obligations." "Obligations incurred by a spouse during the existence of a community property regime are presumed to be community obligations with few exceptions, but the presumption is rebuttable upon proof by clear and convincing evidence that the debt was not incurred for the benefit of the community." *Thomson v. Thomson*, 07-988, p. 15 (La.App. 3 Cir. 2/27/08), 978 So.2d 509, 518, *writ denied*, 08-1129 (La. 4/24/09), 7 So.3d 1191. Under the law of community property, the indebtedness sought by Defendants was as much Durand's as it was Brignac's. Likewise, if that community obligation existed at the time of Brignac's death, it became part of Brignac's estate. As the independent executrix of Brignac's estate, Durand was empowered to make and enforce contracts on behalf of the deceased. La.Code Civ.P. art. 3396.15. And, more particularly, "[t]he executor or administrator may transfer by a giving in payment any succession property in satisfaction of secured or unsecured debts." La.Code Civ.P. art. 3295.

Furthermore, should the indebtedness to Defendants have arisen after the judgment of possession was signed in Brignac's succession, Durand's potential liability for the indebtedness may exist individually. With that in mind, we note that in Durand's Petition for Specific Performance and Damages, it is stated:

> By Judgment of Possession dated February 1, 2011, a copy of which is attached hereto as Exhibit 3 and incorporated by reference, Sue Soileau Brignac was placed into possession of "E. Timeshares 1.

> Vistana Resort, Inc. P.O. Box 22197, Lake Buena Vista, FL 32830
> Vistana Falls Condominium Acct. 259-34-03640 dated March 7,
> [1984], Unit Week 34 in Unit 259 Owners: David C. Brignac and Sue
> S. Brignac", individually and as usufructuary for life with power of
> disposition and testamentary trustee.

As alleged in her petition, Durand was recognized as the owner of one-half the timeshare and as lifetime usufructuary of the other half. In such an instance, Durand may be solely responsible for that indebtedness. *See* La.Civ.Code art. 581 (usufructuary's liability for necessary expenses); La.Civ.Code art. 1764 (real obligations attach to a thing).

To summarize, the cause of Defendants communications was the collection of a debt. As part of those communications, Defendants extended an offer to the debtor the option of paying the debt or tendering the property in satisfaction of the indebtedness. Under Louisiana law, the indebtedness was as much Durand's as Brignac's.

Accepting all the facts alleged in Durand's petition as true and in the light most favorable to plaintiff, with every doubt resolved in plaintiff's behalf, on de novo review we find Durand's petition for specific performance and damages states a valid cause of action for relief. Therefore, we reverse the trial court's judgment which granted Defendants' peremptory exception of no cause of action.

## DECREE

For the foregoing reasons, we reverse the trial court's judgment which granted Defendants' peremptory exception of no cause of action and remand this case to the trial court for further proceedings. The costs of this appeal are assessed to Defendants.

**REVERSED AND REMANDED**.