656 So.2d 1 (1995)
Jennie Marie BRANKLINE, Plaintiff-Appellant
v.
Mildred CAPUANO, Defendant-Appellee.
No. 94-1630.
Court of Appeal of Louisiana, Third Circuit.
May 3, 1995.
Rehearing Denied July 11, 1995.
*2 Dennis R. Sumpter and Edward Eugene Sumpter, Sulphur, for Jennie Marie Brankline.
David Frank Dwight, Lake Charles, for Mildred Capuano.
Before DECUIR, AMY and SULLIVAN, JJ.
AMY, Judge.
Bob and Jennie Brankline agreed to allow Mildred Capuano, Jennie Brankline's aunt, to construct a house to be connected to their residence in Sulphur, Louisiana. In 1988, the home was constructed. Mildred Capuano lived in the house from May 1988, until March 1992, when she decided to return to Florida because her relationship with the Branklines had become strained.
*3 Mildred Capuano informed the Branklines that she intended to either sell or lease the house, which was situated on their lot. By certified letters dated April 23, 1992 and May 12, 1992, the Branklines demanded that Mildred Capuano remove the house.
On July 21, 1992, Jennie Marie Brankline filed suit seeking an injunction to prevent Mildred Capuano from leasing, selling, or allowing anyone except herself to live in the house and to have the improvements recognized as hers due to Mildred Capuano's failure to remove the improvements. Mildred Capuano reconvened seeking damages and attorney's fees.
On July 30, 1992, a temporary restraining order was signed preventing Mildred Capuano from leasing, selling or allowing anyone except for herself from living in the house.
On September 1, 1992, a preliminary injunction was signed enjoining Mildred Capuano from selling or leasing the house and preventing her from allowing anyone but herself to reside in the house. Mildred Capuano appealed and on October 6, 1993, this court affirmed the issuance of the preliminary injunction.
On June 7, 1994, this matter was tried and the trial court awarded Mildred Capuano $40,000.00 and gave her thirty days from the signing of the judgment to remove the house. After the judgment was signed and Jennie Brankline's motion for a new trial was denied, she timely perfected this appeal.

ASSIGNMENTS OF ERROR
The plaintiff's assignments of error are:
1) The trial court erred in finding that there was an agreement by the Branklines to allow Mildred Capuano to build a house on their land, that she would be allowed to remain in the house as long as she lived, and that appellants would take care of her.
2) The trial court erred in concluding that thirty days remained for Mildred Capuano to remove the house.
3) The trial court erred in awarding Mildred Capuano $40,000.00 in damages.

OWNERSHIP OF THE HOUSE
Under Civil Code Article 493, "[b]uildings ... made on the land of another with his consent belong to he who made them." However, when the owner of a building "no longer has the right to keep" it on the land, the owner of the land may demand removal of the building. La.Civ.Code art. 493. If the building owner does not remove the building "within 90 days after written demand, the owner of the land acquires ownership of the improvements and owes nothing to their former owner." Id.
Since Mildred Capuano had the consent of the Branklines to build the house on their property, she retained ownership of the house until ninety days after the Branklines demanded its removal by written notice. The trial court concluded that the letter dated April 23, 1992, notifying Mildred Capuano that she had ninety days to remove the house, commenced the ninety day period under Civil Code Article 493. Although nearly ninety days had run from the April 23, 1992, letter until suit was filed on July 21, 1992, the trial court granted Mildred Capuano an additional thirty days from the signing of the judgment on June 17, 1994 to remove the house.
The Branklines maintain that the trial court erred in granting Mildred Capuano an additional thirty days from the signing of the judgment to remove the house. The Branklines perfected a devolutive appeal, rather than a suspensive appeal; therefore, the thirty days from the signing of the judgment which the trial court granted Mildred Capuano to remove the house has run. Post judgment pleadings submitted by the litigants in this lawsuit indicate that the house was not removed by Mildred Capuano within the thirty day period granted by the trial court. The Branklines clearly own the house at the rendition of this opinion. As a consequence, we need not consider whether the trial court properly granted Mildred Capuano thirty days to remove the house.

MILDRED CAPUANO'S RECOVERY
Although the trial court found that there was no lease between the parties, the court concluded that Mildred Capuano was entitled *4 to damages on the basis of equitable estoppel and quantum meruit.

Equitable Estoppel
The trial court found that the Branklines had promised to take care of Mildred Capuano for the rest of her life and that Mildred Capuano was justified in leaving the property because the Branklines had breached this agreement.
Whether an agreement existed between the Branklines and Mildred Capuano and whether the Branklines breached this agreement are questions of fact. The factual findings of the trier of fact are reviewed under the manifest error-clearly wrong standard of review. To set aside the trial court's factual findings, we must determine from the record that a reasonable factual basis did not exist for the trial court's findings and that the findings are clearly wrong. Stobart v. State through DOTD, 617 So.2d 880 (La. 1993). In this case, conflicting evidence was presented regarding the nature, existence, and terms of the agreement between the Branklines and Mildred Capuano. A fact finder's reasonable evaluations of credibility are not to be disturbed on review where conflicts in testimony exist. Id. The trial court stated: "I was very impressed with her [Mildred Capuano's] testimony. She's 84 years old, appeared to be extremely honest and fair and forthright. I was most impressed with her testimony as being more consistent with the facts of the case than any other witness, I must say, which prompts me to my finding."
On review we conclude that a reasonable basis existed for the trial court's factual findings about the agreement between the Branklines and Mildred Capuano and that these findings are supported by the record. Furthermore, where a fact finder is presented with more than one reasonable and permissible view of the evidence, his choice cannot be clearly wrong or constitute manifest error. Id. Since we do not find that the trial court's factual determinations with respect to the agreement were clearly wrong, the trial court's findings will be upheld.
Under the doctrine of equitable estoppel, a party is obligated to another if the party makes a promise or representation on which another relies to his detriment and changes his position based on this reliance. Wilkinson v. Wilkinson, 323 So.2d 120 (La. 1975); Kibbe v. Lege, 604 So.2d 1366 (La. App. 3 Cir.), writs denied, 606 So.2d 540 (La.1992) and 606 So.2d 541 (La.1992). The trial court concluded that the Branklines had promised to take care of Mildred Capuano for the rest of her life; that she reasonably relied on this promise; and that she changed her position to her detriment by building a house on the Branklines' land, as they suggested, rather than placing a trailer on their land which could be easily removed, as she wished.
In analyzing whether the doctrine was applicable, the trial court stated "here we have an elderly ... [lady] moving to Louisiana based upon the reliance of an agreement ... [that she] come down and build a house on their property and they'll take care of [her] as long as [she] live[s]. According to the plaintiffs, after Mrs. Capuano's demise, then it becomes the property of the Branklines. I think it's not unreasonable for Mrs. Capuano to build a house.... I find that she was justified. It was justifiable for her to rely upon these assertions of the Branklines and that she is entitled to recover.... [T]here was a reliance. Mrs. Capuano relied upon the Branklines' assertion that she could build her house on their property. She even wanted to get a trailer, but she was advised by the Branklines that a trailer would not be wise and she had too much furniture, et cetera. She didn't build a trailer; she built a house. Knowing her elderly years, they went on through with this, and I feel they took advantage of Mrs. Capuano."
Although the doctrine of equitable estoppel is not favored, we do not conclude that the trial court's application of the doctrine was unwarranted in the case before us. Nor can we say that the trial court erred in concluding that Mildred Capuano was entitled to damages as a result of this doctrine.

*5 Quantum Meruit
Civil Code Article 493 provides that "the owner of the land acquires ownership of the improvements and owes nothing to their former owner" upon the failure of the owner of a building to remove the building within ninety days after written demand. Nevertheless, this court concluded in Beacham v. Hardy Outdoor Advertising, 520 So.2d 1086 (La.App. 3 Cir.1987), that this language in Article 493 does not preclude the application of other civilian equitable remedies whose elements are met. In the case before us, the trial court relied on the doctrine of quantum meruit to award damages to Mildred Capuano.
Quantum meruit is an equitable remedy founded upon the principle that no one who benefits from the labor or materials of another should be unjustly enriched at the other's expense. The doctrine operates in the absence of a specific contract to imply a promise on behalf of the person to whom the benefit is conferred to pay a reasonable sum for the services or materials furnished. An individual establishing his right to recover under the doctrine of quantum meruit is to recover a reasonable amount to which he is entitled. An award of damages based on quantum meruit must be established with some degree of detail and specificity. Kibbe, 604 So.2d at 1372; Royal Const. Co. v. Sias, 496 So.2d 1301 (La.App. 3 Cir.1986).
Since the assessment of an award based on the doctrine of quantum meruit is analogous to an award of damages, the record must clearly reveal that the trial court abused its discretion before we will disturb the award. Youn v. Maritime Overseas Corp., 623 So.2d 1257 (La.1993); Royal Const. Co., 496 So.2d at 1305; Taylor v. State, 617 So.2d 1198 (La.App. 3 Cir.), writ denied, 620 So.2d 875 (La.1993). Furthermore, a plaintiff may not recover more than the actual value of the labor or materials or beyond the amount that defendant was enriched by the labor or materials.
The trial court set Mildred Capuano's damage award at $40,000 based on several factors: (1) The house was built at a price of $62,200; (2) The house would currently be valued at a minimum of $70,000 if it were not attached to the Brankline's home; (3) The house was maintained and kept up by the Branklines. On review, we find no abuse of the trial court's discretion in setting the quantum meruit award.

DECREE
Accordingly, for the reasons assigned above, the judgment of the trial court is affirmed. The costs of this appeal are to be paid one-half by the Branklines and one-half by Mildred Capuano.
AFFIRMED.