STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

14-906

BAYOU RAPIDES CORPORATION

VERSUS

MICHAEL AND ADRIENNE DOLE

**********
APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, DOCKET NO. 242,928
HONORABLE GEORGE C. METOYER, JR., DISTRICT JUDGE
**********

SYLVIA R. COOKS
JUDGE

**********

Court composed of Sylvia R. Cooks, Billy H. Ezell and Phyllis M. Keaty, Judges.

AFFIRMED.

Charles D. Elliott
Aaron L. Green
Vilar & Elliott, LLC
P.O. Box 12730
Alexandria, LA 71315-2730
(318) 442-9533
ATTORNEYS FOR DEFENDANTS/APPELLANTS:
  Michael and Adrienne Dole

Ronald J. Fiorenza
Eli J. Meaux
Provosty, Sadler, Delauny, Fiorenza & Sobel
934 Third Street, Suite 800
Alexandria, LA 71301
(318) 445-3631

Misty Shannon Antoon
Antoon Law Firm
600 Desoto Street
Alexandria, LA 71301
(318) 448-8111
 ATTORNEYS FOR PLAINTIFF/APPELLEE:
  Bayou Rapides Corporation

**COOKS, Judge.**

## FACTS AND PROCEDURAL HISTORY

Dr. Michael Dole and his wife Adrienne Dole (the Doles) contacted Bayou Rapides Construction (BRC) in April 2010, to discuss construction of a new, high-end, 11,900-square-foot home. The Doles contacted BRC through Bobby Hunter (Hunter), an employee of BRC with whom the Doles were acquainted. Hunter had about forty years of experience in home building, and his father had over sixty years of experience in construction. Both worked for BRC. The Doles brought their construction plans to BRC, and, based upon those plans, BRC prepared various estimates for construction of the Doles' home. Hunter and Chris Antoon (Antoon), representing BRC, met with the Doles and proposed to build the home on a cost-plus arrangement. BRC proposed to build the home for an 8% profit above the total cost of construction. The parties exchanged emails regarding BRC's proposals but, surprisingly, neither party reduced anything to writing, despite the fact that the initial proposed construction agreement involved building a $1,700,000.00 home. In the end, after many changes and additions to the project, the Doles completed the project for a total cost of $2,413,513.14.

Construction began on the home in 2010, and for the first several months of the project BRC billed at its cost-plus-8% calculation and the Doles paid accordingly. By December 2010, the Doles became uncomfortable with the cost-plus billing and asked BRC to switch to a fixed-price contract. BRC submitted a proposal to the Doles via email to complete the project for a fixed sum based on the plans and specifications provided to BRC by the Doles. Again, work proceeded without any written agreement. BRC submitted a work schedule stating the proposed completion time frame for various aspects of the construction. As

2

work progressed, BRC submitted, and the Doles paid, periodic draw requests. The Doles authorized payment of the draws, and the bank funding the project paid without objection. After paying several draw requests without question, the Doles started asking for more detailed information concerning draw requests. BRC provided such information and allowed Dr. Dole the discretion to pay the draw request in his own time. On April 27, 2011, BRC suggested the parties return to a cost-plus arrangement. According to BRC this suggestion was made as a way to avoid time-consuming change orders by the Doles which it claimed were delaying the project. The Doles maintain that they and their interior designer were not the cause of delays, though they admitted to making several changes in the original plans as the project proceeded. In an email to Antoon dated July 14, 2011, Dr. Dole acknowledged that "due to the nature of the job, and the number of changes that Adrienne and [he] requested" BRC asked to change to a cost-plus arrangement. The Doles did not want to revert back to a cost-plus arrangement. The Doles admit that at least $900,000.00 of the additional expenditures on their house and guest house were due to their own changes from original plans and is not owed by BRC.

On June 22, 2011, the Doles received a draw request from BRC for $35,000.00. Although Dr. Dole had approved and paid BRC's draw requests he demanded a full audit of all previously paid invoices and refused to pay the $35,000.00 draw request until a full audit was performed. BRC and the Doles exchanged emails wherein it became apparent the Doles were not going to pay any more funds without a full forensic audit. The Doles made it known to BRC that they would hire workers to finish the construction if BRC did not acquiesce to their demands. BRC, convinced that the Doles were not going to pay the requested draw, stopped working on the project. The Doles immediately hired the same sub-

3

contractors who had been working on the house and eventually completed the house and guest house almost a year later for over $1,000,000.00 more than they had already paid BRC. BRC sued the Doles for the outstanding amount owed for labor and materials in the construction of their home. The Doles filed a reconventional demand asserting they were overcharged for certain labor costs and alleging the work performed by BRC was sub-standard. In addition to these damages the Doles sought recovery for non-pecuniary damages allegedly caused by BRC abruptly halting construction of the Doles' home.

Following a bench trial, the trial court ruled in favor of BRC finding there was never a contractual agreement as there had never been a meeting of the minds between the parties. The trial court awarded BRC $50,000.00 for its unjust enrichment claim, and denied all of the Doles' reconventional demands. The Doles appeal alleging ten assignments of error.

## LEGAL ANALYSIS

**The Doles' Assignments of Error.**

The Doles allege ten assignments of error:

1. The trial court committed legal error when it found that there was "no meeting of the minds to form a binding contract," . . . .

2. The trial court committed legal error when it failed to find that BRC breached its fixed price contract to complete the home when BRC abandoned the Project solely because Dole questioned the timing of an unscheduled draw request.

3. The trial court committed legal error when it dismissed all of Dole's claims, including claims of poor and defective workmanship . . . .

4

4. The trial court committed legal error when it failed to acknowledge the duties and responsibilities a custom home builder owes to the homeowner, especially in the face of unrefuted expert testimony.

5. The trial court committed legal error when it failed to apply the rules governing a contractor's burden and obligations under a "cost plus" contract.

6. The trial court committed legal error when it failed to recognize that the Louisiana Unfair Trade Practices Act prohibited BRC's conduct and practices during this Project.

7. The trial court committed legal error when it disregarded applicable law and failed to award Dole damages for the cost to complete and repair their home, when BRC breached its contract with Dole and much of the work it did was defective.

8. The trial court committed legal error when it failed to award Dole damages for non-pecuniary loss when this custom home was planned by Dole for over 20 years, was clearly intended to be their "dream home" and was meant to gratify a non-pecuniary interest.

9. The trial court committed legal error when it awarded BRC $50,000.00 without legal basis and contrary to the evidence offered at trial.

10. The trial court committed legal error when it denied Dole's dilatory exception of vagueness and motion to strike, when BRC raised a plethora of vague claims and/or affirmative defenses in summary fashion without sufficient factual allegations.

**No Meeting of the Minds, No Contract.**

It is "well-settled" law that "the existence of a contract is a finding of fact, subject to the manifest error standard of review." *Mark A. Gravel Props., LLC v. Eddie's BBQ, LLC*, 14-46, p. 7 (La.App. 3 Cir. 5/7/14), 139 So.3d 653, 658, (citing *Dubois Const. Co. v. Moncla Const. Co., Inc.*, 39,794 (La.App. 2 Cir. 6/29/05), 907 So.2d 855). Thus, this court cannot set aside the trial court's finding that no contract existed between these parties unless we find the trial court was clearly wrong or manifestly erroneous. *Coffman Homes, L.L.C. v. Sutherland*, 10-178

5

(La.App. 5 Cir. 2/15/11), 60 So.3d 52, *writ denied*, 11-10111 (La. 6/24/11), 64 So.3d 223.

Louisiana Civil Code Article 1906 provides: "A contract is an agreement by two or more parties whereby obligations are created, modified, or extinguished." Louisiana Civil Code Article 1927 provides:

> A contract is formed by the consent of the parties established through offer and acceptance.
>
> Unless the law prescribes a certain formality for the intended contract, offer and acceptance may be made orally, in writing, or by action or inaction that under the circumstances is clearly indicative of consent.
>
> Unless otherwise specified in the offer, there need not be conformity between the manner in which the offer is made and the manner in which the acceptance is made.

In *Gravel*, 139 So.3d at 657-58 (emphasis added) (alterations in original) we explained what is necessary for the formation of a contract:

> "A contract is formed by the consent of the parties established through offer and acceptance." La.Civ.Code art. 1927. In *Philips v. Berner,* 00–103, p. 5 (La.App. 4 Cir. 5/16/01), 789 So.2d 41, 45, *writ denied,* 01–1767 (La.9/28/01), 798 So.2d 119, the fourth circuit discussed contract formation, stating:
>
> > Four elements are necessary for formation of a contract in Louisiana: (1) capacity, (2) consent, (3) certain object, and (4) lawful cause. *Leger v. Tyson Foods, Inc.,* 95–1055 (La.App. 3 Cir. 1/31/96), 670 So.2d 397.
> >
> > The law has long been clear that in order to find that there was an agreement between the parties and have consent pursuant to [La. Civ.Code] art.1927, the court must find that there was a meeting of the minds of the parties. See. [sic] *Buruzs v. Buruzs,* 96–1247 (La.App. 4 Cir. 12/27/96), 686 So.2d 1006. Furthermore, it is horn book law that the consent of the parties is necessary to form a valid contract and *where there is no meeting of the minds between the parties the contract is void for lack of consent. Stockstill v. C.F. Industries, Inc.,* 94–2072

6

(La.App. 1 Cir. 12/15/95), 665 So.2d 802, 820; *Howell v. Rhoades,* 547 So.2d 1087, 1089 (La.App. 1 Cir.1989).

The trial court, after considering the evidence and testimony, concluded there was no meeting of the minds and therefore no contract between the parties regarding the construction of the Doles' home. After reviewing the record we cannot say the trial court manifestly erred in reaching this conclusion. Both BRC and Dr. Dole are sophisticated, experienced, educated parties. Yet, the record reveals there was no written contract governing the parties' rights and obligations in the construction of this high-end residence and guest-house which in the end cost over $2,000,000.00 to construct. The parties exchanged proposals and bids by email and proceeded to the construction and payment for construction without ever confecting a written contract. It is no wonder the project was fraught with delays and misunderstandings, and eventually ended with the Doles becoming their own contractors directly employing the same subcontractors performing the work for BRC. Virtually all of the subcontractors were introduced to the Doles by BRC.

> When two permissible views of evidence exist, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong. *Stobart v. State Department of Transportation and Development,* 617 So.2d 880, 883 (La.1993). The issue to be resolved by the reviewing court is not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one. *Id.* at 882. The reviewing court may not disturb reasonable evaluations of credibility and reasonable inferences of fact when viewed in light of the record in its entirety even though it feels its evaluations are more reasonable. *Id.* Even though an appellate court may feel its own evaluations and inferences are more reasonable than the factfinder's, reasonable evaluations of and reasonable inferences of fact should not be disturbed upon review where conflict exists in testimony. *Id.* However, where documents or objective evidence so contradict the witness's story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable factfinder would not credit the witness's story, the court of appeal may find manifest error or clear wrongness even in a finding purportedly based on a credibility determination. *Id.* If the trial court or jury's findings are reasonable in light of the record reviewed in its entirety, the court

7

of appeal may not reverse, even if convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. *Id.*

*Philips v. Berner*, 00-103, pp. 3-4 (La.App. 4 Cir. 5/16/01), 789 So.2d 41, 44-45, *writ denied*, 01-1767 (La. 9/28/01), 798 So.2d 119.

Louisiana Civil Code Article 1908 provides: "A contract is bilateral, or synallagmatic, when the parties obligate themselves reciprocally, so that the obligation of each party is correlative to the obligation of the other."

In a bilateral contract, the obligation of one party is the other party's cause for the contract. In this case, the record reveals bids and proposals but no established understanding as to payment, risk, object, or cause, all essential elements of a binding contractual agreement. Even the very nature of the supposed contract has been disputed by the parties from the inception of their relationship. Based upon a "proposed bid" e-mailed to the Doles from Antoon on April 20, 2010, the Doles maintain that the agreement was a fixed-price contract. The email from Antoon dated April 20, 2010, sent to "Michael Dole" was captioned "Dole Proposal" and first states: "Mike, How does this look to you? Call or email if you have any questions, comments, etc. If this is ok, let me know. I will send you one more cost plus bill through the end of the pad preparation (April 17). Thanks, Chris." The email next sets forth the caption "Dole *Proposal*- 4/20/10. Bayou Rapides Corporation *proposes to* supply all material [sic] and labor for the construction of the residence as defined by Bill Powell, Architect in the set of construction drawings dated November 16, 2009. The total price excluding allowances, which are defined later in this *proposal*, is $1,785,000. This includes the following:" (emphasis added). The proposal then simply sets forth a list of general categories for which BRC proposes to supply materials and labor:

8

Plumbing (not including fixtures); HVAC; Electrical (not including fixtures); Painting; Foundation (excluding already completed pad); Masonry (including bricks); framing, drywall, insulation, trim, and interior millwork; Cabinets and vanities; Windows and doors; Roofing; Initial termite treatment; Debris disposal; Tile installation labor; Floors-carpet on the second floor, wood or tile on the first floor; Iron work; Rental Equipment; Wine room under the stairs (not defined in the plan but included in our price).

Allowances not included in the above total include:

Plumbing fixtures - $30,000; Electrical fixtures- $15,000; Tile and countertops- $75,000; Door and Cabinet hardware-$15,000; Appliances-$50,000; and Audio and Video- $30,000.

Draw requests-including allowances: 1st draw-Completed foundation-$200,000; 2nd draw-Completed framing not including windows and doors-$200,000; 3rd draw-Installation of exterior windows and doors-$200,000; 4th Draw-Completed drywall, electrical, HVAC and plumbing roughed in-$250,000; 5th draw-Completed roof and exterior brick-$300,000; 6th draw- Completed fireplaces, concrete columns, interior doors-$100,000; 7th draw-Completed exterior paint-$50,000; 8th draw-Completed cabinets and vanities-$100,000; 9th

There is no response from the Doles and no signature on any document regarding this proposed bid. Moreover, many issues normally expected to appear in a construction contract for a project of this magnitude are absent. After work began, following submission of this proposal to the Doles, BRC submitted to Dr. Dole and the Doles' banker itemized invoices for payment, which the Doles paid without question. BRC submitted the same kind of itemized invoices to Dr. Dole and the Doles' banker on June 2, 2010, which falls in the period of time in which the Doles assert the project was operating under a cost-plus contract. The evidence shows the Doles and BRC had an entirely different understanding of how the cost-plus arrangement would be calculated. BRC maintained the figure was arrived at by calculating the hours of labor for its employee times the number of hours worked, plus all overhead expenses for that person to do his job, such as the cost of insurance, workers' compensation insurance, equipment rental, and so forth, plus

9

8% profit. The Doles understood cost-plus to mean the hourly wage of a worker times the number of hours worked plus 8% profit. Nowhere in any agreement between the parties is the method of calculation for the cost-plus arrangement defined or detailed.

The Doles asserted at trial, and argued in brief, that "BRC submitted a fixed-price written contract to Dole to complete the Project for $700,000" and "Dole agreed to this fixed price contract." This, says the Doles, was the "contract" in force and effect when BRC ceased construction. The document referred to, sent by BRC to the Doles, is captioned "Bid to Complete Dole House Job." BRC sets forth in this proposal that this bid "include[s] all work from last invoice emailed 11/23/2010" but "will not include porch floor front or back, but does include upstairs balcony" and further sets forth "[a]ny changes by any subs going forward will be billed directly to the Doles unless reviewed and approved by Chris Antoon and Michael Dole." The proposal next sets forth a list of "Assumptions for this bid" including "elaborate assumptions on the master closet, with minimal millwork required on the other closets." The bid proposal also states as to the guest house that it "will be painted with floor installed (already priced at Floors Unlimited). No other work is included in this price. Will price the rest (trim/cabinets, etc.) when selected." The bid proposal also states "Appliances and plumbing/electrical fixtures are not included in this price. This amount can be subtracted from the total if Dr. Dole would rather pay for these items directly." The proposal also included a proposed draw schedule for payments that merely sets forth dates and amounts of draws with no further explanation or detail. This bid proposal submitted by BRC does not constitute a mutually-consented-to contractual agreement. It is a proposal that leaves much open to question as to the rights and obligations of each party

10

under the proposed agreement. Moreover, during this phase of construction the Doles repeatedly asked for details as would be common under a cost-plus contract, not under a fixed-price agreement. Although the Doles maintain there was a fixed-price contract they admitted at trial that they repeatedly demanded information from BRC during this phase of construction regarding BRC's finances and costs before paying draws in accordance with the draw schedule stated in the proposal, refusing to abide by the proposed draw schedule. The trial court could reasonably conclude there was indeed no meeting of the minds.

The Doles also assert the trial court could not find there was no contract, no meeting of the minds, because BRC made judicial admissions in the pleadings. A review of the pleadings discloses both parties argued varying and alternative theories of recovery and defenses. The alleged admissions by BRC to the effect it believed, among other alternative claims, there was a contractual agreement between the parties, even if deemed an admitted fact, would not constitute a judicial admission as such a statement by BRC would not be adverse to its interest in the case.

> A judicial confession by a party, however, does not preclude that party from denying the correctness of the admission, unless the party claiming the benefit from the admission has relied on the admission to his prejudice. *Crawford v. Deshotels,* 359 So.2d 118 (La.1978).

> As this court explained in *Leday v. Safeway Ins. Co. of La.,* 04–610, pp. 5–6 (La.App. 3 Cir. 11/17/04), 888 So.2d 1084, 1088:

>> A judicial confession under La.Civ.Code art. 1853 constitutes incontrovertible evidence of a particular issue and serves to waive the necessity of any further proof on that issue. *Ramelow v. Bd. of Trustees of the [Univ.] of Louisiana System,* 03–1131 (La.App. 3 Cir. 3/31/04), 870 So.2d 415, *writ denied,* 04–1042 (La.6/18/04), 888 So.2d 184; *C.T. Traina, Inc. v. Sunshine Plaza, Inc.,* 03–1003 (La.12/3/03), 861 So.2d 156. *In order for a party's statement to constitute a judicial confession, it must be*

11

> *an express acknowledgment of an adverse fact. Jones v.*
> *Gillen,* 564 So.2d 1274 (La.App. 5 Cir.1990); *Sanders v.*
> *Earnest,* 34,656 (La.App. 2 Cir. 7/24/01), 793 So.2d 393;
> *State v. Lamb,* 31,919 (La.App. 2 Cir. 5/7/99), 732 So.2d
> 1270. Additionally, "the adverse party must have
> believed the fact was no longer at issue or must have
> relied on it, to his detriment." *Lamb,* 732 So.2d at 1272;
> *Alexis v. [Metro.] Life [Ins.] Co.,* 604 So.2d 581
> (La.1992); *Jefferson Parish v. [Fid.] & Deposit Co.,* 95–
> 951 (La.App. 5 Cir. 4/30/96), 673 So.2d 1238; *Jones,* 564
> So.2d 1274.

*Mitchell v. Artcrete, Inc.*, 09-492, pp. 7-8 (La.App. 3 Cir. 1/13/10), 24 So.3d 1000, 1005 (emphasis added) (alteration in original).

It was not adverse to BRC's multiple claims for recovery against the Doles to assert the existence of contractual agreements and in the alternative assert claims for unjust enrichment. Additionally, any of the claims made in BRC's original petition could be and were amended in its supplemental pleadings which we have found were properly allowed by the trial court in the exercise of its broad discretion as discussed below.

**The Doles Failure to Prove Sub-Standard Work**.

The trial court found the work performed by BRC was not substandard. The evidence supports the reasonableness of this conclusion by the trial court. The Doles professed in writing seven days after BRC stopped working on the project: "To date the quality of craftsmanship that BRC has provided is excellent." Additionally, we agree with the trial court's observation that the fact the Doles used all of the same subcontractors as had worked on their project under BRC's supervision is very telling in terms of satisfaction with the work performed during BRC's handling of the construction of the Doles' home. A review of the testimony concerning the allegedly defective cabinet construction reveals there were two permissible views of the evidence regarding the allegedly defective cabinets

12

making it impossible to find manifest error on the part of the trial court. Moreover, the Doles destroyed evidence concerning the alleged substandard construction of cabinetry in their home despite knowing at that time BRC's attorney wanted to inspect the allegedly defective cabinetry. The Doles simply failed to convince the trial court that the work performed by BRC was substandard. The record supports the trial court's finding that even the Doles themselves made representations that BRC's workmanship was "excellent."

**Louisiana Unfair Trade Practices Act.**

The Doles assert "the trial court committed legal error when it failed to recognize that the Louisiana Unfair Trade Practices Act prohibited BRC's conduct and practices during this Project." This assertion is based upon two factors according to the Doles: (1) BRC's abandonment of the project "in order to avoid the risk of losing money on its fixed price contract," and (2) "BRC burying hidden costs into its labor charges during the cost plus contract that Dole never agreed to." Both parties rely on this court's holding in *McFadden v. Import One, Inc.*, 10-952 (La.App. 3 Cir. 2/9/11), 56 So.3d 1212. In that case we discussed application of the Louisiana Unfair Trade Practices Act, found in La.R.S. 51:1401- 51:1428. Louisiana Revised Statutes 51:1405(A) merely states: "Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." Citizens have a statutory right to bring a private action for damages that result from unfair trade practices. La.R.S. 51:1409. The language of La.R.S. 51:1405 is broad and does not set forth anything that constitutes particular violations. In *McFadden*, 56 So.3d at 1219-20 (alterations in original), we held:

13

"The determination of what constitutes an unfair trade practice is fact-sensitive and, as such, can only be decided on a case-by-case basis." *Doland v. ACM Gaming Co.,* 05–427, p. 8 (La.App. 3 Cir. 12/30/05), 921 So.2d 196, 202.

> "[C]onduct that violates the Unfair Trade Practices Act must involve fraud, misrepresentation, deception, or unethical conduct." *Glod v. Baker,* 04–1483, p. 11 (La.App. 3 Cir. 3/23/05), 899 So.2d 642, 649[, *writ denied,* 05–1574 (La.1/13/06), 920 So.2d 238] "A trade practice is considered unfair when it offends established public policy and when it is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." *Laurents v. La. Mobile Homes, Inc.,* 96–976, p. 10 (La.App. 3 Cir. 2/5/97), 689 So.2d 536, 542 (citing *Thomas v. Busby,* 95–1147 (La.App. 3 Cir. 3/6/96, 670 So.2d 603), *writ granted and judgment vacated,* 96–[ ]891 (La.5/17/96), 673 So.2d 601, *aff'd on remand,* 95–1147 (La.App. 3 Cir. 11/13/96), 682 So.2d 1025, *writ denied,* 96–2990 (La.2/21/97), 688 So.2d 517).

> *Brown v. Romero,* 05–1016, pp. 6–7 (La.App. 3 Cir. 2/1/06), 922 So.2d 742, 746–47, *writ denied,* 06–480 (La.5/5/06), 927 So.2d 315.

> Given that the seminal determination of whether an entity is in violation of La.R.S. 51:1405 is fact based, the standard of review applicable to the first step in reviewing this assignment is manifest error. *Rosell v. ESCO,* 549 So.2d 840 (La.1989).

Based on our review of the record we cannot say the trial court manifestly erred in finding the Doles' two alleged bases for their Unfair Trade Practices claim do not amount to a violation of La.R.S. 51:1405. BRC did not simply "abandon" the Doles' construction project. It terminated its services because the Doles refused to compensate it for work performed. Moreover, as we have affirmed the trial court's ruling that there was no contract between the parties, fixed-price or otherwise, the Doles' first basis for this claim is rendered moot. As to the second basis for this claim, although we affirm the trial court's ruling that there was also no cost-plus contract, such does not automatically render the Doles' second alleged basis for this claim moot. Nevertheless, the second alleged basis for the Doles'

Unfair Trade Practices claim does not constitute an unfair trade practice under the facts of this case. The Doles characterize BRC's unfair trade practice as using "hidden costs" to obtain money it was not entitled to for work performed. The problem with this argument is that it relies on the Doles' interpretation of what "costs" could be included in the proposed cost-plus agreement. Because there was no meeting of the minds on this subject we cannot conclude that BRC engaged in any "immoral, unethical, oppressive, unscrupulous, or substantially injurious" trade practice by including in its billing to the Doles what it understood to be "costs" that were part and parcel of its cost-plus proposal.

**Non-pecuniary Damages.**

Louisiana Civil Code Article 1998 provides:

Damages for nonpecuniary loss may be recovered when the contract, because of its nature, is intended to gratify a nonpecuniary interest and, because of the circumstances surrounding the formation or the nonperformance of the contract, the obligor knew, or should have known, that his failure to perform would cause that kind of loss.

Regardless of the nature of the contract, these damages may be recovered also when the obligor intended, through his failure, to aggrieve the feelings of the obligee.

The Doles assert that the home subject of this lawsuit was their "dream home" which they had been planning for twenty years and the construction of this home was "intended to gratify a non-pecuniary interest." We note that despite this claim, the Doles did not discuss this home with their interior designer, whom they knew very well, until about eight months before commencing construction. Additionally, the Doles admit they made numerous changes throughout the construction of this house which led to a significant increase in the final cost. They rely on our decision in *Mayerhofer v. Three R's Inc.*, 597 So.2d 151 (La. App. 3 Cir., *writ denied*, 600 So.2d 680 (La. 1992), for the proposition that we

15

must "look to the nature of the contract" to determine whether the damages are pecuniary or non-pecuniary.

Because we have affirmed the trial court's finding that there was no contract between these parties, there is simply no contract to be breached and no contract from which we might determine the pecuniary or non-pecuniary nature. Recovery for nonpecuniary losses for breach of contract presupposes a contract between the parties. Additionally, there is no evidence that would tend to show that BRC "knew or should have known that [its] failure to perform would cause [a non-pecuniary] loss" to the Doles. La.Civ.Code art. 1998. Moreover, we have affirmed the trial court's finding that BRC stopped performing construction because of non-payment. Additionally, the Doles admitted "the quality of [BRC's] craftsmanship" was "excellent." Thus, the record does not support a finding that BRC intended through its refusal to continue working on the house because of non-payment to "aggrieve" the Doles' feelings. According to the Doles' own admission, BRC performed the work on the Doles' home with "excellent" craftsmanship. BRC only stopped work on the project because the Doles refused to pay for work already done. This assignment of error is without merit.

**Dilatory Exception of Vagueness and Motion to Strike.**

The Doles maintain the trial court erred in denying its Exception for Vagueness and Motion to Strike BRC's Supplemental Answer to Original and Amended Reconventional Demand, filed on April 11, 2013, and BRC's Second Supplemental and Amending Petition, filed on June 7, 2013, despite their admission that *the trial court did not recognize any of BRC's affirmative defenses raised in these pleadings.* Nevertheless, the Doles maintain, "out of an abundance of caution" the trial court committed legal error in allowing BRC to file these

16

amended pleadings and affirmative defenses "without sufficient factual support," and not in compliance with La.Code Civ.P. art. 891(A) and 1005. Louisiana Code of Civil Procedure Article 891 provides:

> The petition shall comply with Articles 853, 854, and 863, and, whenever applicable, with Articles 855 through 861. It shall set forth the name, surname, and domicile of the parties; shall contain a short, clear, and concise statement of all causes of action arising out of, and of the material facts of, the transaction or occurrence that is the subject matter of the litigation; shall designate an address, not a post office box, for receipt of service of all items involving the litigation; and shall conclude with a prayer for judgment for the relief sought. Relief may be prayed for in the alternative.

Louisiana Code of Civil Procedure Article 1005 provides:

> The answer shall set forth affirmatively negligence, or fault of the plaintiff and others, duress, error or mistake, estoppel, extinguishment of the obligation in any manner, failure of consideration, fraud, illegality, injury by fellow servant, and any other matter constituting an affirmative defense. If a party has mistakenly designated an affirmative defense as a peremptory exception or as an incidental demand, or a peremptory exception as an affirmative defense, and if justice so requires, the court, on such terms as it may prescribe, shall treat the pleading as if there had been a proper designation.

The trial court denied the Doles' Exception and its Motion to Strike without stating any particular reasons. A review of the pleadings reveals BRC did state its affirmative defenses with particularity sufficient to put the Doles on notice of the substance of these alleged affirmative defenses and allegations of fraud and misrepresentation. We find no abuse of the trial court's broad discretion in granting BRC leave to amend its pleadings just as the trial court earlier in the litigation allowed the Doles the same latitude.

> Pleadings must be construed reasonably so as to afford litigants their day in court and to do substantial justice. *Long v. Long,* 28,763 (La.App.2d Cir.12/11/96), 684 So.2d 1099, *writ denied,* 97–0096 (La.3/7/97), 690 So.2d 20. The Louisiana Code of Civil Procedure articles are to be construed liberally, and with due regard for the fact

17

that rules of procedure implement the substantive law and are not an end in themselves. La. C.C.P. art. 5051.

The law takes a liberal approach toward allowing amended pleadings in order to promote the interests of justice. *Reeder v. North,* 97–0239 (La.10/21/97), 701 So.2d 1291. Amendment of pleadings should be liberally allowed, provided the movant is acting in good faith, the amendment is not sought as a delaying tactic, the opponent will not be unduly prejudiced and trial of the issues will not be unduly delayed. *Premier Bank, Nat'l. Ass'n v. Robinson,* 618 So.2d 1037 (La.App. 1st Cir.1993).

The decision as to whether to grant a defendant leave to amend an answer is within the sound discretion of the trial court, and its ruling will not be disturbed on appeal except where an abuse of discretion has occurred and indicates a possibility of resulting injustice. *Hogan v. State Farm Auto Ins. Co.,* 94–0004 (La.App. 1st Cir.12/22/94), 649 So.2d 45, *writ denied,* 95–0215 (La.3/17/95), 651 So.2d 276.

*Hibernia National Bank v. Antonini*, 33,436, p. 6 (La. App. 2 Cir. 9/21/00), 767 So.2d 143, 146-47.

On motion of the Doles the bench trial date was upset and a trial was scheduled for March 18, 2014. The deadline for filing supplemental and amending pleadings was set for December 18, 2013. Nothing in the complained-of pleadings indicates BRC was acting in bad faith when it filed these pleadings nor is there any indication the filings were a delay tactic. These filings did not result in any delay of trial nor do the Doles demonstrate how they were unduly prejudiced by these filings. This is especially so when even the Doles admit the trial court did not base its ruling on any of the affirmative defenses alleged in these pleadings. Neither do the Doles demonstrate in what manner these pleadings are alleged to have raised the possibility that an injustice might result from the trial court's allowing these amended pleadings. This assignment of error is without merit.

18

**The Award of Damages to BRC.**

The Doles maintain the trial court erred in awarding any monetary damages to BRC because BRC failed to abide by the fixed-price contract. As we have discussed herein there was no fixed-price contract. The trial court awarded BRC $50,000.00 in damages as the amount it determined the Doles were unjustly enriched, and BRC was impoverished as a result of BRC's unpaid contributions to the completion of the Doles' home. This decision by the trial court is based largely on its determinations of credibility of the numerous witnesses who testified, which determinations we will not disturb in the absence of manifest error. As we have discussed above: "[W]here two permissible views of the evidence exist, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong." *Stobart v. State Dep't of Transp. and Dev.,* 617 So.2d 880, 883 (La.1993). In *Denbury Onshore, L.L.C. v. Pucheu*, 08-1210, p. 17 (La.App. 3 Cir. 3/11/09), 6 So.3d 386, 397-98 (alterations in original), we explained the elements of a claim for unjust enrichment:

> [Louisiana Civil Code] Article 2054 provides in part, "[w]hen the parties made no provision for a particular situation . . ." Pursuant to Article 2055, equity in Article 2054 "is based on the principles that no one is allowed to enrich himself unjustly at the expense of another." It is the basis for a claim of unjust enrichment. For a party to recover under the theory of unjust enrichment, he must prove an enrichment, an impoverishment, "a causal relationship between the enrichment and the impoverishment," "an absence of justification or cause for the enrichment or impoverishment," and the lack of any other remedy at law. *Fogleman v. Cajun Bag & Supply Co.,* 93–1177, pp. 4–5 (La.App. 3 Cir. 6/15/94), 638 So.2d 706, 709, *writ denied,* 94–1900 (La.10/28/94), 644 So.2d 375 (quoting *Kirkpatrick v. Young,* 456 So.2d 622, 624 (La.1984). If a party has another legal remedy to prevent the loss he seeks to recover, unjust enrichment is not a proper ground for recovery. *Id.*

The evidence supports the reasonableness of the trial court's finding that the Doles were enriched by BRC's work on their home, BRC was impoverished by

19

performing work for which it was uncompensated, there was clearly a causal relationship between the "excellent" work performed by BRC on the Doles' home and BRC's impoverishment thereby. There is no justification to assert that BRC should not be paid for its efforts. Even the Doles admitted the quality of BRC's work was "excellent." Because we have affirmed the trial court's ruling that there was no contract between the parties, BRC has no other legal remedy at law. In *Bieber-Guillory v. Aswell*, 98-559 (La.App. 3 Cir. 12/30/98), 723 So.2d 1145, we discussed recovery under the doctrine of *action de in rem verso* or unjust enrichment. We explored the rationale enunciated in *Fogleman v. Cajun Bag & Supply Co.*, 93-1177 (La.App. 3 Cir. 6/15/94), 638 So.2d 706, *writ denied*, 644 So.2d 375 (La.10/28/94), and *Morphy, Makofsky & Masson v. Canal Place*, 538 So.2d 569 (La.1989), and noted the United States Fifth Circuit Court of Appeals' decision in accord, *SMP Sales Management, Inc. v. Fleet Credit Corp.*, 960 F.2d 557 (5th Cir. 1992) relying on *Morphy*. Both parties rely on these cases but neither discussed our decision in *Bieber-Guillory* which we find instructive. In that case we said:

> In *Fogleman*, we explained:
>
>> Louisiana jurisprudence, when formulating a substantive theory of recovery in the absence of a contract (regardless of theory being denominated *action de in rem verso,* unjust enrichment or even "quantum meruit"), has consistently applied a two-fold limitation to the recovery. First, the plaintiff cannot recover more than the actual value of his services and materials, plus a fair profit; and secondly, the plaintiff cannot recover more than defendant was enriched by plaintiff's services. *See Custom Builders & Supply, Inc. v. Revels,* 310 So.2d 862 (La.App. 3 Cir.1975), citing Planiol, Chapter III Section 93B (Unjust Enrichment). See also *Swiftships, Inc. v. Burdin,* 338 So.2d 1193 (La.App. 3 Cir.1976).
>
> *Id.* at 710.

Essentially, an individual establishing his right to recover under the doctrine of unjust enrichment is entitled to recover a reasonable amount for his services. *Brankline v. Capuano,* 94-1630 (La.App. 3 Cir. 5/3/95); 656 So.2d 1. There is no specific test which must be applied to determine the reasonable value of such services. It is a matter of equity depending upon the circumstances of each case. *Jones v. City of Lake Charles,* 295 So.2d 914 (La.App. 3 Cir.1974). However, a court may not award speculative damages which have not been established with some degree of detail and specificity. *Smith v. First Nat'l Bank of DeRidder,* 478 So.2d 185 (La.App. 3 Cir.1985); *Smith v. White,* 411 So.2d 731 (La.App. 3 Cir.1982), *writ denied,* 413 So.2d 508 (La.1982).

. . . .

Since the assessment of an award based on the doctrine of unjust enrichment or quantum meruit is analogous to an award of damages, the record must clearly reveal the trial court abused its discretion before we will disturb the award. *Brankline,* 656 So.2d 1; *Youn v. Maritime Overseas Corp.,* 623 So.2d 1257 (La.1993). Our role in reviewing general damages is not to decide what we consider an appropriate award, but rather to review the exercise of discretion by the trial court. "Each case is different and the adequacy and inadequacy of the award should be determined by the facts or circumstances particular to the case under consideration." *Youn,* 623 So.2d at 1260.

*Bieber-Guillory*, 723 So.2d at 1151.

In this case, the Doles have never denied that BRC is entitled to the $35,000.00 that they refused to pay without an audit. BRC claimed substantially more than this sum as damages but has not appealed the amount awarded. Given this fact, we cannot say the trial court abused its discretion in awarding BRC $50,000.00 damages for unjust enrichment under the circumstances of this case. There is no question that the work performed by BRC, which even the Doles admit was of good quality, contributed to the final product which was completed after BRC ceased any further contributions.

21

For the reasons stated, we affirm the trial court judgment and assess all costs of this appeal to Appellants Michael and Adrienne Dole.

**AFFIRMED.**